Rector v. Board of Improvement.

---

RECTOR v. BOARD OF IMPROVEMENT.

1. MUNICIPAL CORPORATIONS: *Power to make assessment for local improvement.*
The power of a city council to assess real property for local improvements as provided for by the act of 1881, depends upon the assent of a majority in value of the property holders owning property adjoining the locality to be affected; and without such assent the assessment will be void.

2. SAME: SAME: *Petition for local improvement.*
The petition which the act of 1881 requires shall be presented to the council of a city, in order to obtain an assessment for local improvement, must be signed by property holders owning real property adjoining the locality to be affected, or, by their duly authorized agents. An administrator is not the owner within the meaning of the statute, of real property which belonged to his intestate, nor is the signature of a member of a company or stockholder in a corporation, evidence that the company or corporation consents to the assessment.

Rector v. Board of Improvement.

3. **SAME:** *Same : Improvements outside of district : Estoppel to dispute assessment.*
An assessment for local improvement in a city, under the act of 1881, cannot be legally imposed on the property in one improvement district, to pay the cost of improvements in another, or for the general improvement of the city. and the owner of property assessed for making an improvement outside of the district in which it is situated, although he knows of the assessment and that the improvement is being made on the faith of it, will not be estopped by his silence during the progress of the work from afterwards disputing the validity of the assessment.

APPEAL from *Garland* Circuit Court in Chancery.
J. B. WOOD, Judge.

*Sam. W. Williams* and *F. W. Compton*, for appellants.

1. The district was illegally formed, leaving out important territory which had to be drained, and necessary outlets. The commissioners exceeded their powers in building more sewerage than they had a right to build, and the constitutional rights of appellant will be impaired if they are compelled to contribute to the erection of improvements outside the district, whereby their property will be taken for public use without just compensation. *Mansf. Dig., sec.* 826 ; *Art. II., sec.* 22, and *Art. XIX., sec.* 27 *Const.; Burroughs on Tax., secs.* 32, 33 ; 16 *Mich.,* 269 ; 65 *Penn.,* 146 ; 69 *Id.,* 353 ; *Cooley Tax.; Ch.* 20, 606, 607 ; *Welty on Assess., Ch.* 22, 250 *et seq., sec.* 575 *and notes ;* 1 *Southern Rep.,* 873.

2. Two of the commissioners were not residents of the district. *Cooley Tax., p.* 656 ; 29 *Me.,* 531 ; 1 *Denio,* 647 ; *Burrough Tax., sec.* 148 ; 3 *Bush,* 416, 423 ; 17 *Wisc.,* 442 ; 46 *N. Y.,* 178 ; *Cooley Tax., p.* 257–8–9 ; 1 *Dillon;* 267 ; 51 *Me.,* 599 ; 21 *Wend.,* 178 ; 11 *N. Y.,* 563 ; 3 *N. Y.,* 396 ; 47 *Cal.,* 361 ; 2 *Johns. Cases,* 346.

3. A majority of the *owners* of property, in value, in in the district did not sign the petition. This was jurisdictional. Howard could not sign for the Hot Springs Land Co., in which he was only a stockholder. 59 *Cal.,*

206; *Cooley Taxation, p.* 657 *and notes*; 53 *N. Y.*, 128; *Henderson v. Baltimore,* 8 *Md.*

Administrators are not *owners.* 59 *Cal.*, 206; *Art. XIX,* sec. 27, *Const.*; *Burroughs Tax., sec.* 149. Without a majority the action of the council was void. 8 *Md.*, 352; 18 *Id.*, 276; 36 *Ind.*, 90; 36 *N. J. L.*, 49; 69 *Penn. St.*, 365; *Burroughs Tax., p.* 477.

4. There was no estoppel by conduct. *Bigelow on Estoppel,* p, 519; 36 *Ark.*, 96; 11 *Conn.*, 251; 43 *N. Y.*, 120; *Bisp. Eq., sec.* 288.

Additional brief by *F. W. Compton* and *Sam. W. Williams,* for appellants.

1. The city council appointed as members of the board of improvement two persons, Gaines and Sumpter, who were not residents of the district, when the statute expressly required that they should be. *Mansf. Dig., secs.* 828, 830. This provision of the statute, being for the benefit and protection of the tax payer, is mandatory, and the violation of it by the city council rendered the assessment illegal and void. *The People v. Board of Education,* 1 *Denio,* 647; *Speer v. Robinson,* 29 *Maine,* 531; *Hare v. Carnall,* 39 *Ark.*, 196; *Payson v. Hall,* 30 *Maine,* 319, 325; *Dresden v. Gould,* 75 *Maine,* 298; *Hews v Reis,* 40 *Cal.*, 255; *French v. Edwards,* 13 *Wall,* 506.

2. The assessment sought to be enforced is not based on, nor in accordance with, the plan and estimate made and reported by the board for the construction of the sewer, and is therefore void. See *Mansf. Dig., secs.* 834, 836, 837, 838, 868; *Myrick v. City of La Cross,* 17 *Wis.*, 442-6; *Matter of Protestant Episcopal School,* 46 *N. Y.*, 178; *Minnesota Linseed Oil Co. v. Palmer* 20 *Minn.*, 468; *Brown v. Mayor &c.*, 128 *Mass.*, 282. The sewer was estimated by the board to cost $9,600, and when finished actually cost only $8,375; but the city council, instead of levying

Rector v. Board of Improvement.

$9,600 as they should have done, (because the petitioners had asked for no improvement except the construction of a sewer), proceeded to levy and did levy the sum of $22,200 as a tax on the real estate in the district for improvements of another character for which the property owners had never petitioned, and for which they never in any way consented to be taxed. The excess over $9,600 not being consented to by a majority in value, or even by *any one* of the owners, was plainly illegal and vitiated the entire assessment. See the petition of the property owners, the estimate of the board, and the ordinance assessing the tax, all for the construction of a sewer *and nothing else.*

3. If extending the sewer main two miles outside the district was necessary—and we contend it was not—the fact was as well known when the district was established as ever afterward; and the district should have embraced the whole city, as the engineer, French, in his deposition says it should have done. The district was improperly established, no matter whether designedly or not; and any taxation on the small district carved out for such extension of the sewer main would be to tax the owners of property in the district for *general purposes* under the pretext of *local taxation for the benefit of their property,* which the law does not permit. See *Burrough on Taxation, secs.* 32, 33; *Ryerson v. Utley,* 16 *Mich.,* 269; *Hammet v. Philadelphia,* 65 *Penn. St.,* 146; *Washington Avenue Case,* 69 *Penn. St.,* 353; *Brown v. Mayor, &c., supra.*

4. The appellants are not estopped to resist the collection of the tax. *Bigelow on Estoppel, p.* 519; *Loudon v. Litchfield,* 11 *Conn.,* 251; *Cruger v. Dougherty,* 43 *N. Y.,* 120.

*G. W. Murphy*, for appellee.

It is contended on the part of the appellants that the district was improperly formed, that the petition for the assessment was not signed by a majority of the owners of real property therein, and that there was a disagreement between the estimate furnished and the petition therefor, the petition being for sewers and the estimates for that and other matters.

The territory to be embraced in the district was within the judgment of the council, and the limits are in accordance with the petition. The petition for the improvement was adjudged to be the sentiment of a majority of the owners of real property by the circuit judge, and the estimate for surface drainage was necessary to the construction of a complete sewer system; the macadamizing, which was foreign, was left out in the estimates.

Passing from these matters, it was the intent of the Legislature to require the parties aggrieved to object by suing within twenty days, and this law was well directed. It was known that the making of improvements, especially of this character, would often be urgently demanded, and that delay could not be tolerated; hence, it was provided that the revenue contemplated by the assessment might be hypothecated for the purpose of borrowing money to hasten the improvement. Twenty days was ample time for the parties whose property was to be benefited, to object, and if they did not do so, it was not unreasonable to conclude that they favored the proceeding.

Passing, however, from all questions as to the validity of the ordinance, the appellants are estopped from questioning or resisting the collection of the tax imposed. Outside of Rector, the appellants signed the petition and paid the first installment; Rector, by his pleading and evidence shows that

Rector v. Board of Improvement.

he had full knowledge of the defects the ordinance contained, and that with this knowledge he paid the first installment and remained silent until the contemplated revenues had been hypothecated, money borrowed and the sewer constructed; he cannot now, after receiving the benefits contemplated, be allowed to say that there was any impropriety or any illegality in the proceeding.

He knew that his property was being benefitted by the sewer and he was willing to accept the benefit, and from his silence during the first year following the special assessment, we are justified in concluding that he would have remained silent until all installments were paid, had not the sewer been built earlier on borrowed money.

Under the reasoning in *Motz v. City of Detroit*, and *Tones Executors v. City of Columbus*, the former at *page* 495 *of* 18 *Michigan Reports*, and the latter at *page* 644 *of American and English Corporation Cases*, the appellants are estopped from questioning the legality of the ordinance. It is true that Rector did not sign the petition, but he paid the first installment, knew that the improvements were being made, and even knew that the money would be borrowed on the faith of the assessment.

BATTLE, J.   Ten resident owners of real property in the city of Hot Springs petitioned and requested the city council to lay off a certain portion of Hot Springs, in which they resided and had property, into an improvement district for the purpose of grading and otherwise improving the streets and alleys therein, and constructing sidewalks and sewers; and the council, by ordinance, did so, and designated the district so laid off as " Improvement District No. 1." A short time thereafter many owners of real property within such district presented to the council a petition praying that " a general sewer be constructed through the district from north to south," and that the costs thereof be assessed and

charged upon the real estate therein. The city council, thereupon, appointed three citizens of Hot Springs a board of improvement. The members of the board so appointed qualified and entered upon the discharge of their duties and procured estimates of the probable cost of constructing the sewer, which was $9,600. The cost of other improvements in the district not named in the petition, such as surfacing and shaping streets, well holes, and drain pipes connecting with the Hot Springs creek, street gutters, curb stones, and macadamizing streets, were estimated at $17,100. After this, on the 22d of May, 1885, the city council passed an ordinance, in which they recited that a majority in value of persons owning real property in the district had petitioned the council for the construction of sewers and asked that the cost thereof should be assessed and charged upon such property, and recited that the estimated cost of such sewers was $22,200, which was three and one-half per centum of the assessed value of such property, according to its value as shown by the last county assessment on file in the office of the county clerk; and therein provided that said assessment should be levied and paid in successive installments, so that no assessment should in any one year exceed one per centum of the assessed value of the real property, and that the first installment should be paid on or before the first day of July 1885, and that the subsequent installments should be paid on or before the first day of July in each succeeding year until all of said assessment was paid. The board admits that $11,709.07 have been collected on this assessment and insists that there are now due and unpaid thereon $1,228.71. To recover the amount remaining unpaid, or a large portion of it, the board instituted this action against the real property upon which it was severally and respectively assessed, and therein made Henry M. Rector and others, the respective owners of the property, defendants.

Rector v. Board of Improvement.

Rector answered, alleging, among other things, that two of the board of improvement were and are non-residents of the district; that a majority of the owners of real property within the district did not sign the petition to the council, asking that the sewers be made and that the cost thereof be assessed and charged upon such property; and that the board had made and were making extensive and expensive sewers and drains outside of the district, at the cost and expense of the owners of the real estate therein, for the benefit of property which was not taxed to pay for the same; and insisted that the assessment made by the council was and is illegal and void, and that the real property in district No. 1 is not and should not be made liable or taxed to pay the cost and expense of constructing the sewers and drains outside of it.

We find the following facts were shown by the evidence adduced at the hearing of this cause : It was clearly proven that two of the board were at the time of their appointment and thereafter continued, non-residents of the district. Witnesses differ as to the majority in value of the owners of the real property in the district having signed the petition for sewers. Among the signers of the petition for sewers were Albert B. Gaines, as administrator of the estate of George L. Smith, deceased, and Thomas Howard. The value of the real property in the district constituting a part of the estate of Smith, as shown by the county assessment list on file when the petition was presented, was $40,240. The real property in the district belonging to the Hot Springs Land Improvement Company was of the value of $25,200, as shown by the county assessment. Thomas Howard was a member or stockholder in this company. In estimating the value of the property owned by the petitioners, the value of the property belonging to the estate of Smith and to the Hot Springs Land Improvement Company was counted and included.

The sewers were laid in the district and cost about $8.375. In addition to this there were laid pipes for surface drainage, twelve inches in internal diameter, and of aggregate length variously estimated from 500 to 1000 feet, at the cost of one dollar for each linear foot. This work was begun about the latter part of June, 1885. In the month of September following the board determined to extend the main sewer two miles and thirty-four feet beyond and south of the district. To accomplish this it borrowed of Joseph Reynolds $16,500, and agreed to pay for the loan eight per centum per annum interest. The sewer was extended as the board had determined to do, and lateral openings were made in it for a mile beyond the limits of the improvement district, for branch sewers to enter. The reason of the board for extending the sewer and making lateral openings was: They were compelled to construct the main sewer from the north to the south of the district, that being the course of the running water, and to extend the same to the Hot Springs creek, it being the only available outlet. At the southern boundary and from thence along the sewer to within a quarter of a mile where it empties into the Hot Springs creek, the territory adjacent is thickly settled. The connection of the sewer with the creek at the southern boundary of the district would have greatly annoyed the citizens residing in that vicinity and seriously impaired their health, by offensive excrement passing through it, and would have been strongly resisted. In order to avoid this opposition and the creation of a nuisance, the sewer was extended. The lateral openings were left to accommodate those who would desire to connect with and use the sewer. As anticipated, many hotels, bath and boarding houses, outside of the district, have been connected with the main sewer, through these openings, by branch sewers, and they have been and are now using it, without making any compensation for such use or connection.

How much of the $16,500 was used in paying for the improvements made in the district, the evidence fails to show. One witness testified that a part of it was, but does not state how much. The board, however, admits that $11,709.07 were collected on the assessment made by the council. So far as the evidence shows how much was expended for improvements in the district, this amount was amply sufficient to have paid therefor, and the expenses of its collection.

Rector knew of the formation of the district; the object of it; that an assessment had been made by the council to pay for improvements to be made in the district; that the improvements were being made; made no opposion to these improvements; paid the first of the installments of the assessment falling due; and acquiesced in the making of the improvements in the district. He testified that he was perfectly willing to co-operate in the organization of a sewer district, and to have paid the assessments necessary to pay for the sewer; but that he opposed the taxing of the property in the district to construct the sewer out of it, and the borrowing money when there was already enough collected to pay for the sewers in it. He owns real property in the district, upon which $585.04 of the amount sued for in this action were assessed and charged under the ordinance of the council.

A decree for $585.04 was rendered against this property of Rector; and it was ordered by the court, that if this amount was not paid within ten days after the date of the decree, the property should be sold to pay the same; and Rector appealed.

Special taxes imposed upon property supposed to be benefitted, for the improvement of streets, or a locality, can only be levied under authority of positive constitutional or statutory law. The measure of the power, and the mode of its exercise, can only be found in the statute or constitution conferring it, and must, as a general rule, be strictly pursued.

Rector v. Board of Improvement.

All requisitions prescribed and intended by such laws for the protection of the citizen, "and to prevent a sacrifice of his property, and by a disregard of which his rights might and generally would be injuriously affected," are mandatory, and must be especially followed, or the acts done will be invalid. 2 *Dillon on Municipal Corporations* (3d Ed.), secs. 763, 764, and authorities cited; *Cooley on Taxation*, (2d Ed.), p. 609, and authorities cited; *Welty Law of Assessments*, secs. 275, 282, 299, 321; *Radcliffe v. Scruggs*, 46 *Ark.*, 96; *French v. Edwards*, 13 *Wall*, 511.

The constitution of this state fixes the maximum rates of state, county and municipal taxation, and then ordains that "nothing therein shall be so construed as to prohibit the general assembly from authorizing assessments on real property for local improvements in towns and cities, under such regulations as may be prescribed by law, to be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected; but such assessment shall be *ad valorem* and uniform." In pursuance of the authority vested in it by the constitution, the general assembly, by an act entitled "An act to regulate the manner of assessing real property for local improvements in cities of the first class," approved March 22d, 1881, after providing how an improvement district shall be formed, and that the order or ordinance establishing it shall be published, provides: "If within three months after the publication of any such ordinance a majority in value of the owners of real property within such district adjoining the locality to be affected shall present to the council a petition praying that such improvement be made, which petition shall designate in precise terms the nature of the improvement to be undertaken, and that the cost thereof be assessed and charged upon the real property situated within such district or districts, the city council shall at once appoint three persons, residents of

Rector v. Board of Improvement.

the district, and owners of real property therein, who shall compose a board of improvement for the district." It then requires each member of the board to qualify within ten days after his appointment, and says: "Immediately after their qualification the board shall form plans for the improvement *within* their district as prayed for in the petition, and shall procure estimates for the cost thereof.   *   *   * As soon as said board shall have formed said plan and shall have ascertained the cost of the improvement, it shall report the same to the city council, which shall at once by ordinance assess said cost upon the real property in said district or districts as the case may be, assessing each parcel of real property according to its value as shown by the last county assessment on file in the office of the county clerk."

It is, therefore, manifest, that the power of the city council to make an assessment upon real property, for the purpose of making a local improvement, depends upon the assent or petition of a majority in value of the property holders owning property adjoining the locality to be affected. This fact is jurisdictional, and the want of it makes a local assessment by a city council void.   It is prescribed and intended for the benefit and protection of the property holder, and is mandatory and must be followed, or the assessment will be invalid.   2 *Dillon on Municipal Corporations, secs.* 800, 802, and authorities cited; *Sharp v. Spier,* 4 *Hill,* 76.

*1. MUNICIPAL CORPORATIONS: Power to make assessment for local improvement.*

The petition must be signed by property holders owning real property adjoining the locality to be affected, or their duly authorized agents.   An administrator is not the owner of the real property which belonged to his intestate at the time of his death.   That belongs to his heirs.   They hold the legal title to it, subject to the payment of his debts.   The statute authorizing administrators to sign for estates cannot, so far as the heirs are concerned, give their signatures any efficacy in the face of the constitution requiring the consent

*2. SAME: Same. Petition for local improvement.*

of the owners. Nor is the signature of a member of a company, or stockholder in a corporation, to such petition, evidence of the assent of the company or corporation to the assessment.

It is insisted, however, that Rector is estopped by his silence and acquiescence from disputing the validity of the assessment upon his property. Is this true? Estoppels *in pais* depend upon facts. "The principle," as said by this court, in *Jowers v. Phelps*, 33 *Ark.*, 468, "upon which they are applied is clear and well defined. A party," says the court, "who by his acts, declarations, or admissions, or by failure to act or speak under circumstances where he should do so, either designedly, or with willful disregard of the interest of others, induces or misleads another to conduct or dealings which he would not have entered upon but for this misleading influence, will not be allowed, afterwards, to come in and assert his right, to the detriment of the person so misled." According to this principle an estoppel will arise "from pure but misleading silence with knowledge, or passive consent, joined with a duty to speak." Silence of itself will not raise an estoppel. It must be a breach of duty to the person who is misled by it. To constitute it an estoppel, there must be both the opportunity and the duty to speak; and the action of the person asserting the estoppel, which was induced by it, must be the natural and obvious result of the silence, and the party maintaining silence must be in a situation to know that some one is relying thereon, and acting, or about to act, as he would not, had he spoken and asserted his right. *Bramble v. Kingsbury*, 39 *Ark.*, 131; *Gill v. Hardin*, 48 *Ark*, 409; *Fones' Executors v. City of Columbus*, 3 *Am. & Eng. Corp. Cases*, 644; *Bigelow on Estoppel* (4th Ed.), pp. 564, 565, 575.

In cases like this, there must be some kind of a liability to pay the assessment before an estoppel can arise. The

Rector v. Board of Improvement.

reason silence operates as an estoppel in any case is the fact
it would be bad faith for the party who has maintained it to
assert his right to the detriment of another, who has acted
because of it, when, if he had spoken and asserted his rights
in time, he would have prevented such action.    If an as-
sessment be such that no one could in good faith act upon it,
and it would not be bad faith, under any circumstances and
at any time, for the owner of the property upon which it is
imposed to resist its collection, he could not be estopped by
silence from doing so.    It, then, becomes important to know
upon what theory or principle a special assessment for local
improvement is based, and for what purpose and to what ex-
tent it can be imposed, and by what rules it is regulated, in
order to determine when the owner of property charged with
it will be estopped by silence from disputing its validity.

" Special benefits to the property assessed, that is, benefits
received by it in addition to those received by the community
at large," says Judge Dillon, " is the true and only solid
foundation upon which local assessments can rest."    They
are based upon the assumption that the persons, upon whose
property they are imposed, are specially and peculiarly bene-
fitted in the enhancement of the value of their property by
the expenditure of the money collected on the assessment ;
and that while they are made to bear the cost of the local
improvement, they at the same time suffer no pecuniary loss
thereby, " their property being increased in value by the ex-
penditure to an amount at least equal to the sum they are re-
quired to pay."    Upon this theory, or idea, they are required
by the constitution of this state to be based upon the consent
of a majority in value of all the property holders owning
property adjoining the locality to be affected, and the statutes
provide that when any ten resident owners of real property
in any city of the first class, or of any portion thereof, shall
petition the city council to take steps towards the making of

3. SAME:
    Same.
Improve-
ments out-
side of dis-
trict:  Es-
toppel to
dispute
assessment.

any local improvement, it shall be the duty of the council to lay off the whole city, " if the whole of the desired improvement be *general and local in its nature to the whole city,* or the portion thereof mentioned in the petition, *if it be limited to a part of the city only,*" into one or more districts, clearly meaning thereby that the limits of the district so laid off shall be co-extensive with the special benefits to be received from the proposed improvement. The board of improvement is required to form plans for the improvement *within* the district, and to procure estimates of the cost thereof. When this is done, an assessment, based upon such plans and estimates, is then required to be imposed by the council to pay the cost so ascertained ; and the money raised upon such assessment is confined by statute to improvements made in the district. While there may be more than one improvement district in a city for the same general purpose, and the statutes authorize the boards of the different districts to combine so as to form one board for the whole territory to be thus improved, so as to make the whole improvement uniform, they positively forbid money raised by assessment in one district being expended in another. From this it is clear that local or special assessments cannot be imposed upon the property in one district to pay the cost of improvements made in a locality outside of the district, or for the general improvement of the city. *Mansf. Dig.,* secs. 825, 836 ; 2 *Dillon on Municipal Corporations,* sec. 761 ; *Cooley on Taxation,* pp. 606–7–8, and authorities cited ; *Hammett v. Philadelphia,* 65 *Penn. St.,* 146 ; *Washington avenue,* 69 *Penn St.,* 352.

It, therefore, follows, if a city council lay off a district for the purpose of making an improvement therein, and upon a petition of owners of real property in the district appoints a board of improvement, and imposes an assessment on the real property in the district to pay the cost of the improvement, and the board on the faith and by means of the assess-

Rector v. Board of Improvement.

ment causes the improvement to be made or constructed, that an owner of real property in the district who knows of the formation of the district, of the assessment, that the improvement is being made on the faith of the assessment, and of the defects or infirmities in the proceedings which make the assessment invalid, and remains silent while the improvements are being made, notwithstanding he has an opportunity to speak, will ever afterwards be estopped from disputing the validity of the assessment. The assessment being made for the special benefit and improvement of his and the other real property in the district, he cannot stand by in good faith and receive the benefit of the improvement in the enhanced value of his property, and refuse to pay his proportion of the assessment, on the faith of which it was made. Under such circumstances it would be his duty to speak and assert his rights, and failing to do so, he would thereby waive them. Having failed to speak when, in the exercise of good faith, he ought to have done so, he will not be permitted to do so, when, in the exercise of the same good faith, he ought to remain silent. On the other hand, if the improvements were extensive and expensive and were made outside of the district, he would not be estopped from disputing the liability of his property to an assessment to pay for the same. In the latter case there would be no liability or semblance of an obligation, in law or equity, to pay, and no duty to speak. No one would have a right to rely on the assessment imposed upon his property to make improvements in the district, for the purpose of constructing or 'making improvemetns outside. The statutes, equity, justice, reason and good conscience forbid; and it would be most unnatural and unreasonable to do so. No one would have a right to assert the silence of the property holder in the latter case as an estoppel against him. The highway robber, who has taken the money of the traveller by force and intimidation, can, with as good

reason, say to the traveller he is estopped from demanding
it, because he did not protest in express terms against sur-
rendering it, when he was robbed. *Fones Executors v. City
of Columbus*, 3 *Am. and Eng. Corp. Cases*, 644; *The State ex
rel. v. Mitchell*, 31 *Ohio St.*, 592; *Rickett v. Speaker*, 77 *Ind.*,
371; *Patterson v. Banner*, 43 *Iowa*, 482; *Robinson v. City of
Burlington*, 50 *Iowa*, 240; *Hitchcock v. Galveston*, 96 *U. S.*,
350; *Daniels v. Tearney*, 102 *U. S.*, 420, 422; *Ferguson v.
Landram*, 1 *Bush*, 599; *Same v. Same*, 5 *Bush*, 235; *Cooley
on Taxation*, 2d *Ed.*, 1819.

Rector was, probably, estopped from disputing
the liability of his property to assessment to
pay for the improvements made in District No. 1; but it
appears that enough has been collected, on the assessment
made, to pay for them. The occasion which brought the
assessment into being having passed, and the purpose for
which it was imposed having been accomplished, it has
ceased to exist, and is no longer of any effect. On the as-
sessment made, his property cannot be held liable to con-
tribute to pay the cost of the main sewer laid outside of the
district, that is, the sewer extending two miles and thirty-
four feet south of the district.

The decree of the court below, therefore, is reversed, and
the complaint of appellee is dismissed.