AHERN *v.* BOARD OF IMPROVEMENT DISTRICT NO. 3 OF TEXARKANA.

Opinion delivered February 9, 1901.

1. IMPROVEMENT DISTRICTS—TAXATION OF CHURCH PROPERTY.—Under Sand. & H. Dig., § 5324, providing for the creation of improvement districts upon presentation of a petition of a majority in value of the owners of real property within such districts, church property, though exempt from general taxation, and therefore not appearing as valued on the county assessor's list, is liable for local improvement assessments, and extraneous proof of its value is admissible. (Page 72.)

2. SAME—ASSESSMENT OF IMPROVEMENTS.—In determining whether a majority in value of the land owners within a proposed improvement district have petitioned for the improvement, such improvements upon the land as have been made since the last assessment and before the filing of the petition should be included. (Page 72.)

3. SAME—ASSESSMENT OF RAILWAY SPUR TRACK.—A railway spur track which runs along one of the streets in an improvement district, and which is shown to have been assessed by the state board of assessors, should not be considered in determining whether a majority in value of the land owners have petitioned for the improvement, if it does not appear whether such spur track is assessable as real estate or not, nor whether it would be benefited by the contemplated improvement. (Page 73.)

4. SAME—ASSESSMENT OF WATER PIPES—RIGHT OF WAY.—The underground right of way along the streets of the water pipes of a water company, and the easement for maintaining in the ground the poles of telegraph and electric light companies, and the right of way of their overhead wires, which are assessable as personal property, were properly excluded in determining the value of the real property in a proposed improvement district. (Page 73.)

5. SAME—ASSESSMENT OF PUBLIC PROPERTY.—Public property, not being assessable, should be excluded in determining the value of the real property in an improvement district. (Page 73.)

6. SAME—POWER OF EXECUTOR TO SIGN PETITION.—An executor, though clothed with the power to sell the lands of his testator, has no power to bind the heirs by signing a petition for an improvement district which will embrace such lands. (Page 74.)

7. SAME—DOWER LANDS.—A widow, being the life tenant merely of dower lands, is not authorized to sign for such lands in a petition for an improvement district. (Page 74.)

8. SAME—LAND HELD IN COMMON.—Where land owned by two tenants in common was signed for by one of them only in the petition for an improvement district, the value of one-half of the land only should be counted in the petitioners' list. (Page 74.)

9. SAME—RIGHT OF MORTGAGOR TO SIGN.—A mortgagor, after foreclosure but before the period of redemption has expired, has a right to sign for the mortgaged land in a petition for an improvement district. (Page 74.)

10. SAME—RIGHT OF VENDOR TO SIGN.—Property sold before presentation of a petition for an improvement district and signed for by the vendor should be included in the petitioners' list where the vendee had knowledge thereof at the time of his purchase. (Page 74.)

11. SAME—RIGHT OF VENDEE TO SIGN.—It was proper to include in the list of petitioners for an improvement district a vendee of land who was in possession, and had done all that he was required to do, although his deed was not delivered to him until after the petition was filed. (Page 74.)

12. SAME—ASSESSMENT OF HOMESTEAD.—Const. 1874, art. 9, § 3, provides that homesteads shall not be subject to the lien of any judgment or decree except for the purchase money, for specific liens, or for taxes. Art. 19, § 27, provides that nothing in the constitution shall be so construed as to prohibit the general assembly from authorizing assessments on real property for local improvements. *Held,* that a homestead is not exempt from the lien for assessments for local improvements. (Page 75.)

13. SAME—IRREGULARITIES—WAIVER.—Irregularities in the proceedings of the board of benefit assessments and of the city council subsequent to the passage of the ordinance creating an improvement disrict, not going to the foundation principles on which the district was organized, are waived unless objected to within twenty days after the date of publication of such ordinance, as required by Sand. & H. Dig., § 5336. (Page 76.)

14. SAME—MODE OF ASSESSMENT.—An assessment for local improvements in proportion to benefits is not prohibited by Const. 1874, art. 19, § 27, providing that such assessments shall be *"ad valorem* and uniform;" and it is within the discretion of the legislature to require such assessments to be made according to the value of the real estate affected or according to the value of the benefits added by the improvements. (Page 76.)

Appeal from Miller Circuit Court.

JOEL D. CONWAY, Judge.

*Oscar D. Scott,* for appellants.

The requirement of Sand. & H. Dig. § 5337, requiring the court to obtain and use a copy of the last assessment of the property, was mandatory. 30 Ark. 609, 612; Cf. 14 Am. & Eng. Enc. Law, 249; 67 Ark. 30; 40 Cal. 255; 50 N. Y. 502. The proper assessment list was conclusive evidence of the values of the property when the council came to decide whether the petition was signed by a majority in value of the property holders. Sand. & H. Dig. § 5367; 45 Ark. 400. The assessment was not *"ad valorem* and uniform"* as required by art. xix, § 27 of the constitution. While, by art xxi, § 5 of the constitution, church property is exempt from general taxation, it is not exempt from local improvement assessments. Cooley, Taxa. 146; 2 Dill. Mun. Corp. § 777; 2 Desty, Taxa. p. 248; 11 Johns. 80; 1 Harr. 104; 8 Bush, 508; 116 Mass. 181; 6 R. I. 235; 7 Md. 517; 24 Mo. 20; 2 Ore. 155; 86 Ill. 336; 36 Ind. 338; 42 Oh. St. 128; 35 N. J. 157; 4 La. Ann. 1; 84 N. Y. 121; 22 Pa. St. 496. "Taxes," as spoken of in the constitution, are general taxes, and do not include local assess-

ments.   21 Ark. 40; 65 Ark. 496.   The assessment was void for want of uniformity.   10 Am. & Eng. Enc. Law, 296; 48 Ark. 251; 32 Ark. 31; 21 Am. Rep. 677; S. C. 51 Cal. 15; 48 Ark. 383.   The street railway track, gas and water mains, etc., were taxable as real estate, and should have been included.   2 Dill. Mun. Corp. § 789; 44.N. E. 375; 52 N. E. 501; 46 N. E. 437; 50 Ga. 620; 38 Conn. 422; 45 Oh. St. 98; 32 Cal. 412.   The assessment was not *ad valorem.*   9 Heisk. 349; 34 Ill. 203; 42 Ark. 152, 162; 172 U. S. 269.   A frontage or area assessment would not be permitted.   14th Amend. Const. U. S.; 172 U. S. 269; 91 Fed. 37; 94 Fed. 361; 100 Fed. 538.   It was error to assess homestead property.   31 S. W. 52; *cf.* 61 Ark. 26; 55 Ark. 369; 47 Ark. 445.

*Williams & Arnold* and *J. D. Cook,* for appellees.

Extraneous evidence of values was admissible.   50 Ark. 116. If the assessment of any one's property was too large, he should have made a tender of the proper amount.   92 U. S. 575, 617; Cooley, Taxa. 537, 538, 541; 24 Ark. 459.   The rule in Texas as to exemption of homesteads is peculiar to that state, and grows out of its peculiar constitutional provisions.   Const. Texas, art. 16, § 50. The homesteads were properly included.   The gas and water mains were not liable to this assessment, for the reason that there would accrue to them no benefit corresponding to the amount which they would have to pay, if any at all.   172 U. S. 269; 52 Ark. 107; 55 S. W. 955.

Bunn, C. J.   This is a suit in equity, under the statute, brought to foreclose assessment liens, and enforce the collection of the delinquent assessments against certain owners of real estate in the district.   The chancellor decreed for plaintiffs on the complaint, answer, and testimony in the case, and defendants appealed.

In May, 1899, upon the petition of ten resident owners of real property in the proposed district, the city council of the city of Texarkana, in this state, organized said Improvement District No. 3, and within the time required by law the clerk of the said city council caused the organization ordinance to be published as required by law, and due proof was made of the same.   Within three months from the publication of said ordinance, to-wit, on the 8th day of August, 1899, what purported to be a majority in value of the real property owners in the district filed their petition before the council, under section 5324 of Sand. & H. Dig., and the

city council on the same day passed an ordinance as provided in said section. At the same time the council appointed commissioners to assess the benefits to .accrue to the real property in the district by reason of the contemplated improvements under the act approved May 8, 1899, amendatory of sections 5333, 5334 and 5335 of Sand. & H. Dig., who afterwards reported ·such assessment. A board of improvement was at the same time appointed under section 5324, and this board proceeded to form plans for the improvement, and to do other things required by section 5329.

The principal objection—an objection which includes several others numbered in the abstracts and briefs in the case—is that a majority in value of real property owners in the district did not really sign the petition required by section 5324. To specify the irregularities covered by this · objection, the defendants say: First, that all the real property in the district was not included in the ordinance passed on the petition; and, secondly, that much of the property going to make up the majority in value was signed for by persons not competent to do so. The petition was on the valuation made by the county assessor, as appeared from his assessment list, made in 1897, for the taxes of 1898 and .1899, which was at the time the last list on file in the clerk's office. The real fact ·is that the county assessor had made his assessment for the taxes of 1900 and 1901 in July, the month before, but the same had not been returned and caused to be filed in the county clerk's office at the time the petition was filed, and, of course, not when the same was signed by the petitioners, and was not filed until in September following. This state of things has created some confusion in the record.

The defendants contend that, in order to ascertain the majority in value of the property in the district, all the assessable property should have been included, and that all of said property was not included—for instance, the real property of churches, which they show to have been of the value of $2,800. Church property is exempt from general taxation, and therefore does not appear as valued on the county assessor's list. By a decided weight of authority, however, although exempt from general taxes, church property is liable for local improvement assessments. The contention of the defendants is therefore sustained, and in such case extraneous proof of value is properly made. For a similar reason, the plaintiffs contend that improvements made upon real property in the district since the last county assessment, and before the filing of the petition, ought to be included; and they allege and

show that such improvements had been made within said time, upon the property of the signers of said petition, of the value of $24,650. Under this head the defendants allege that there was a spur track of the St. Louis, Iron Mountain and Southern Railway Company, which ran on one of the streets in the district for a distance of 1,000 feet, and that the track and right of way of the said railroad was valued by the state board of assessors at the rate of $2,000 per mile. It is not shown by what title or tenure this right of way was held by the railroad company, whether by lease, easement or license; and we therefore cannot say that it is real property of the company, as owner, in the purview of the law, nor whether or not it is assessable as such. The statement as to the assessment by state railroad board throws no light on the question, as we cannot ascertain from it that this spur track was included in that assessment, or was intended to be included; and finally it is not shown that this property would be benefited by the contemplated improvements.

The same and more may be said as to the contention in favor of including the underground right of way along the street of the water pipes of the water works company, and the easement in the ground in which the poles of the Postal Telegraph and Electric Light Companies are set up, and the right of way of the overhead wires, all of which seems to have been assessed on the county assessment as personal property at the power house outside the district. These were properly excluded, under the showing made.

Public property is not assessable, and was properly excluded.

The valuation of the real property in the district according to the county assessor's books, was as follows:

| | | |
|---|---|---|
| For 1898 | $570,310 | |
| Add to this the church property | 2,800 | |
| Improvements | 24,650 | |
| Total | 597,760 | |
| Majority | 298,880 | |
| For 1899 | | $606,607 |
| Church Property | | 2,800 |
| Total | | 609,407 |
| Majority | | 304,703½ |

In the matter of the property of J. F. Smith's estate, signed for by the executor, W. A. Williams: In *Rector* v. *Board of Improvement*, 50 Ark. 116, this court held that an administrator is not competent to sign such a petition, so as to bind the heirs. A majority of the judges cannot see any distinction between the power of an administrator and an executor, although clothed with a power of sale as was the executor in this case. This property was valued at $6,600, for 1898 and $6,600 for 1899, and should be deducted from the petitioners' list.

The property of the estate of G. W. Tyson was signed for by his widow. The statute does not confer this right upon a tenant for life, and she is not the owner, in contemplation of the statute, except as a life tenant. *Mayor, etc., of Baltimore* v. *Boyd*, 64 Md. 10, 20 Atl. 1028. This property was valued at $4,500, both for 1898 and 1899, and should be deducted from the petitioners' list.

In the matter of the property of S. M. and J. O. Hardin, valued at $1,200 in both assessments, and only signed for by one of them, one-half should be deducted from the petitioners' list— it appearing that they were tenants in common—leaving $600.

The same may be said as to the property of G. J. and F. M. Hollis, valued at $650 in both years, leaving $325 to be deducted. The $800 against J. P. Kline is to be deducted by consent.

The case of E. F. Friedell, whose property was valued for 1898 at $3,650, and $4,000 for 1899: He was a mortgagor. Foreclosure proceedings had been begun, and had progressed to a decree, but the mortgagor was still allowed to redeem at a future day. He was the owner, in the meaning of the law.

F. H. Eubanks had purchased from Turner Bros. before the presentation of the petition, but Turner Bros. had signed the petition before they sold to Eubanks, of which signing the latter had knowledge when he purchased, and he is bound by the lien. This property was valued in both assessments at $4,200.

R. R. Gaines sold his property, valued in both assessments at $4,000, to Offenhauser; the petition having been signed by the latter for the property. The sale had been complete from Gaines to Offenhauser, and the latter put in possession. Everything had been done by the vendee that he was required to do, and he could have compelled specific performance. In fact, the deed, for reasons of Gaines alone, was delayed, but was delivered on 12th August. Offenhauser was a proper signer for this property.

On the other hand, J. H. Mullins was a signer, but his property was not counted with the petition. It was valued at $1,400, and should have been so counted. The other objections under this head do not seem to be insisted upon.

According to the council's estimate, the property of the signers was valued at $294,900. Taking from this the Smith and Tyson estates, $10,600, leaves $284,300, and adding to this the $24,650 improvements and the $1,400, value of Mullins' property, $26,050, we have the value of the property of the signers, $310,050—$925, Hollis & Hardin property, leaving $309,025, which is in excess of majority, according to assessment of 1898, of $10,145, and of the assessment of 1899 of $4,322.·

It is contended by the defendants that the homestead is exempt from this assessment lien by section 3, art. 9, of the constitution of the state, which reads as follows: "The homestead of any resident of this state, who is married or the head of a family, shall not be subject to the lien of any judgment or decree of any court, or to sale under execution or other process thereon, except such as may be rendered for the purchase money, or for specific liens, laborers' or mechanics' liens for improving the same, or for taxes etc." These assessments, though differing in some respects from taxes for general purposes, are yet authorized under the taxing power. If so, so far as the mere exercise of power is concerned, the same rule applies as in cases of taxes. Besides, section 27, art. 19, of the constitution, under which improvement districts are formed and their assessments levied and collected, reads thus: "Nothing in this constitution shall be so construed as to prohibit . the general assembly from authorizing assessments on real property for local improvements in towns and cities under such regulations as may be prescribed by law, to be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected. But such assessment shall be *ad valorem* and uniform."

After this much is said as the last section in the body of the constitution, it is not conceivable how we should be able to construe any other clause or section of that instrument so as to render nugatory and of no effect the provision therein contained; for, unless the real property of the district is bound for the expenses of the desired improvement, none could be made. This is the more apparent when it is known that in towns and cities a great portion, if not the most, of the occupied lots are

occupied as homesteads. At all events, eliminate the homesteads in any town or city from the list of property bound for these assessments, and no district of important extent could be formed.

There is a suggestion of a possible conflict between the particular provision of our state constitution and the fourteenth amendment of the constitution of the United States, as construed in *Norwood* v. *Baker,* 172 U. S. 269.* There was certainly some conflict between our original act authorizing the organization of improvement districts and the said fourteenth amendment as construed. But this was thought to be cured by our amendatory act approved May 8, 1899. To some of us, however, there still remains a conflict, or, rather, I should say, room for a conflict, accordingly as the benefit assessments under said amendatory act may be made according to the one method or the other. But a majority of us see no conflict as the law now is. In the proceedings at bar the assessments seem to have been both according to the value of the property and also according to the assessed benefits; for the benefits were assessed by the rate of percentage on the assessed value of the property itself, resulting so as to comply with the provision of both constitutions as we see it. Therefore, for the purposes of determining this case, we need not discuss that point further. But, for the benefit of districts hereafter to be formed, some of us may take occasion to express an opinion on the subject before this decision goes to the publisher.

Some question is raised as to the proceeding of the board of benefit assessments and the city council, subsequent to the ordinance passed upon the petition of the majority in value of the property owners, which we will say, by way of parenthesis, was duly published, so far as we can determine from the record. But we have settled the fundamental or jurisdictional questions involved, and as to mere irregularities, not going to the foundation principles upon which the district was organized, the objections were not made within the twenty days, and the defendants are therefore barred by the statute.

Let the decree be affirmed.

RIDDICK, J. I concur in the opinion of the chief justice, but on one of the constitutional questions involved I can go further,

---

* See, however, the case of *French* v. *Barber Asphalt Paving Company,* 181 U. S. 324, decided since the opinion of the court herein, which seems to modify the case of *Norwood* v. *Baker, supra.* [Reporter.]

and say that I see nothing in our constitution that necessarily prohibits an assessment in proportion to benefits. The section of the constitution which counsel for appellant contends forbids such an assessment is as follows: "Nothing in this constitution shall.be so construed as to prohibit the general assembly from authorizing assessments on real property for local improvements in towns and cities under such regulations as may be prescribed by law, to be based upon the consent of a majority in value of the property holders owning property adjoining the locality affected; but such assessments shall be *ad valorem* and uniform." Const. 1874, art. 19, § 27.

It is said that an assessment levied upon the real property of the improvement district in proportion to the benefit that each lot or tract receives from the improvement is not an *ad valorem* assessment, and is therefore prohibited by the last clause of the section above quoted, which requires that such assessments shall be *"ad valorem* and uniform." But it seems to me that an assessment upon real property in proportion to the benefit it receives from an improvement is still an *ad valorem* assessment. It is, of course, not an assessment according to the full value of the lot or tract improved, but it is an assessment according to the value of the benefit which it receives. Not the value of the whole lot, but the value that is added to it by the improvement, is assessed. The benefit which each lot, tract, or piece of real estate in the improvement district receives is assessed according to its value, and therefore the assessment is an *ad valorem* assessment; that is, an assessment according to valuation, as distinguished from an assessment according to frontage or area of lot.

Again, it is said that the framers of the constitution by the clause above quoted meant an assessment according to the value of the whole lot or tract, and not an assessment according to the value of the benefit it receives from the improvement. It may be that they did not have in mind an assessment in proportion to benefits. We are not able to tell whether they did or not. But their intention must be found in the language of the constitution itself, and, as this language does not exclude or forbid an assessment in proportion to the value of the benefits, we should presume that there was no intention to forbid such an assessment. It has often been decided that the only sound principle upon which assessments for local improvements can stand is that the property assessed is specially and peculiarly benefited by the improvement. *Norwood* v. *Baker,* 172 U. S. 269; Dillon on Mun. Corp. (4th Ed.),

§ 761.   If this be the basis upon which such assessments rest, then the most equitable method of apportioning the burden among the property holders of the district is by an assessment in proportion to benefits.   Theoretically speaking, there can be no doubt of this; for, if a number of property holders are required to pay for a public improvement on the principle that their property receives a special benefit therefrom, the payment should be made by each in proportion to the benefit he receives.   It would be neither right or just to require one property owner to pay the full value of the benefit he receives from the improvement, while his neighbor is required to pay only a third or a fourth of the benefit he receives.   But this inequality may result unless the assessment is made in proportion to the benefits received.   And this furnishes another reason for believing that it was not intended to prohibit an assessment of that kind, for the obvious purpose of the prohibitory clause under consideration was to forbid, not equitable, but arbitrary and unjust methods of assessment.   The intention was to prohibit assessments from being made in proportion to the frontage or size of the lot or tract; for, as the size or frontage of the lot bears no certain relation either to its value or the amount of the benefit it will receive from an improvement, an assessment made in such an arbitrary method must often result in great injustice.   Assessments of that kind had, at the time our constitution was adopted, often been condemned as arbitrary and unjust, and for this reason they were forbidden by the requirement that assessments should be *"ad valorem* and uniform."   As the purpose was to prohibit arbitrary and unjust assessments, we should not expect to find a prohibition against so equitable and just a method of assessments as one made in proportion to the benefits received.   The language used does not to my mind necessarily carry such a meaning, and to put such a construction upon it would it seems to me be a perversion of the meaning intended to be conveyed.   I am therefore of the opinion that, under our constitution, it is within the discretion of the legislature to require that these assessments be made according to the whole value of the land in the improvement district, or according to the value of the benefit added by the improvement.   For practical purposes, one of these methods of assessments may be as good as the other, and it is for the legisislature to determine which shall be applied.

HUGHES and WOOD, JJ., concurred in the opinion of RIDDICK, J.