Evans, J.
This action is to enjoin the collection of assessments for the improvement of Hanford street, this city.
One of the questions, among others, is whether the city acquired jurisdiction to make the improvement in question. It is contended on the part of plaintiffs that the statute was not complied with, in that the owners of one-half the feet front of the real estate bounding or abutting upon said proposed improvement did not petition in writing the city council for said improvement.
Under the legislative act, under which the city council proceeded (90 O. L., 156), it was provided, among other things, that no improvement shall be made thereunder unless the owners of one-half of the feet front of the real estate bounding or abutting thereon petition the city counsel or board of public works therefor. It is imperative that this provision of the statute be complied with, otherwise the city had no .authority to order the improvement.
No number less than one-half the feet front petitioned by the owners thereof could confer jurisdiction, and if, under the evidence, the contention of plaintiffs is maintained, those who did petition could not bind the owners of the abutting property who did not petition or participate in promoting the improvement.
It is claimed that Mrs. Schweitzer, who was counted as a petitioner for 603 feet, sold and conveyed her said property by deed on July 17, 1894, and that she did not own said property on April 29, 1895, when the ordinance for making the improvement was passed by the city council, nor when the resolution declaring the necessity for the improvement was passed by council on January 28, 1895.
It is. also contended that Adaline Gall, one of the petitioners, as to-316 feet for which she signed, owned but a dower estate therein, which was not assigned or set off to her, and that her children by her first husband, who died intestate as to said real estate, were the owners of the same subject to the dower interest of their mother.
*218 It is also claimed that Mrs. Moeller, a petitioner for 660 feet, owned but a life estate therein.
There is no doubt but that the evidence established the above facts as contended and the question is then one of law as to whether the said property should be counted as part of the feet frontage that goes to the majority petitioning for said improvement, or if it should not be counted, as contended f or by the plaintiff. If said three petitioners were not the owners of said property in the sense contemplated by law, then they should not be counted, and in that event the city council bad no jurisdiction to make said improvement for want of a sufficient petition and the action of counsel 'as to those who did not participate was void.
A determination of the question as to Mrs. Schweitzer’s property is not without its difficulties, and I must admit that the trend of my independent convictions is not altogether in accord with my conclusions as to this question, as resolved from the weight of the authorities.
Mrs. Schweitzer owned the property at the time she signed the petition, or rather at the time she directed her son to sign it for hei*, which I find she did. She sold and conveyed the property to another some six months before the city council acted on the petition; hence at the time council acted on the petition Mr. Sims, her grantee, owned the fee in said property. I might say here that inasmuch as the court must under the rules of evidence determine from the record evidence the owner of said property, I can not find that Mr. Dresbach had any title or interest in said property, and I can not find that he was acting as agent for Mr. Sims, the grantee, at the time he induced Mrs. Schweitzer to sign the petition, notwithstanding that Mr. Dresbach testified, if I recollect correctly, that ’he was a joint owner with Sims, and was authorized to speak for him. I can not regard this evidence because of the rule that the records provide the best evidence on this subject, and, also, because of the further rule that the testimony .alone of the agent can not establish the agency. Mr. Sims did not sign the petition, and I am unable to find that he either directed Mrs. Schweitzer to sign or in any *219 way ratified it or encouraged this improvement in any manner. He afterwards conveyed the property. back to Mrs. Schweitzer, she coming into title again. No doubt her act in signing the petition would preclude her from resisting said assessments. But the question her¿ is, would it be conclusive as to others? The weight of many authorities and The reasoning tend strongly to support the contention that the fact that she signed the petition when she was the owner of the property, and when it was filed with the council, would be sufficient to clothe council with jurisdiction, as to the feet frontage signed by her, -and, as before stated, my reasoning is influenced by this view of the question. But I am confronted with the holding of the circuit court of this circuit in Tone, ex rel, v. Columbus, in 1 C. C. R., 305, in which this very question is met and decided. The question is fully made and decided in the above ease. The contention of counsel for defendant that the .facts in that case may not have called for such a holding can not avail, for the presumption would be that the question was made' in the case. The court in the opinion expressly state that the question did arise out of the evidence, and say:
“Other questions arise out of the evidence, showing that according to the deed- record, some of the petitioners conveyed away their property after signing the petition, but before the passage of the ordinance, and that others did not become owners of abutting property until after the passage of the ordinance. The act contemplated a petition signed by those who Were owners of the property at the time of the passage of the ordinance. In view of the rule exempting the plaintiffs from offering plenary evidence, they were- relieved of the burden incumbent on them when they showed from the public record that the petitioners in this class were not then the owners of abutting property, it then became the duty of the defendants, who asserted ownership contrary to the record, to establish it.”
Again the court say:
“They had no authority whatever to pass an ordinance authorizing the improvement, except on petition of two-thirds of the front feet abutting on the street. And before passing it they should have known to a certainty that the requisite number *220 had' signed. None of the petitioners guaranteed by his signature, nor was -he so required, that the requisite number was on the petition. Each signed for himself alone, and council should have ascertained that the aggregate signers comprised the owners of two-thirds of abutting property, before taking final action. Such being the duty of council, the property-holders might well have relied on their action as being in accordance with law.”
Now, what gives additional force to the application of the Tone case (supra-) to the case at bar, is that the language of the act under which the improvement was made in the Tone case as to the petitioning is substantially the same as in the act under which ITanford street was improved. Section 24 of the act (72 O. L., 157), provides—
“The city council shall not have the right to authorize any improvement under this act, unless the owners of two-thirds of the feet front of the property abutting upon any street or avenue to be improved in said city shall petition the city council for the privileges of this act.”
It is, therefore, apparent that the court in the Tone case had the same question presented as we have here, and substantially the same language as to petitioning for the improvement, and held that the act contemplated a petition signed by those who were owners of the property at the time of the passage of the ordinance.
For this reason I reach the conclusion that the 603 feet of Mrs. Schweitzer should not have been counted.
As to the 316 feet signed by Mrs. Gall, I am of the opinion that under the rule laid down in Cary v. Gaynor, 22 O. S., 584, and Campbell v. Park, 32 O. S., 544, the owner of an unassigned dower in real estate could not bind the property by her signature as against the tenants in common of the land. The evidence is not sufficient to show that Mrs. Gall had authority to sign as the agent of her children who owned the fee in said premises subject only to her undivided dower interest. Council had no lawful authority to count said 316 feet in determining the number of feet front in the petition for the improvement.
As to the life estate of Mrs. Moeller, although it has been held in Maryland (64 Md., 10) that a life tenant can not bind *221 the property by joining in the petition, but in Ohio the holding of a perpetual lease can bind the property without the lessor joining, and this, notwithstanding the leasehold may be forfeited upon default of the lessee in the payment of the ground rent, on the ground that the assessments are levied upon the corpus .of the real property, and not upon the titles by which the same may be held, when otherwise provided by law (60 O. St., 244).
I am inclined to the opinion that the signature of Mrs. Moeller to the petition would bind the property,
The 603 feet of Mrs. Schweitzer and the 316 feet of Mrs. Gall should not have been counted for the reasons above stated. Eliminating said number of feet in said two parcels from consideration in determining the number of feet front of owners of property abutting on said improvement reduces the number below one-half the feet front abutting thereon, and below the statutory number which would give the city council jurisdiction to order said improvement. This being' so, the prayer of all the plaintiffs who did not sign the petition should be granted, unless it be that of Mr. Holden, and the question as to him I will now briefly consider.
Long after this improvement was made and after the assessment ordinance was passed Holden purchased the property in question from Schmidt. The deed recites that the grantee assumed and agreed to pay said street assessments as a part of the consideration for said premises.
Under the authorities cited, and which is but the enunciation of a well established rule of law, by reason of such an agreement Holden could not defend" against payment of the assessment, notwithstanding his grantpr Schmidt might have successfully done so if he had retained the premises.
But Plolden contends that said agreement and assumption was inserted in said deed by mistake, and he offers in evidence a subsequently executed deed from said grantor which seeks to correct the former deed, and recites that it was the intention of said parties to reserve to said Holden to contest said assessments if the same were illegal or unjust, and to protect said grantee against payment of the same. This last deed was exe *222 euted some four years after the date of the original deed to said Holden.
It must be borne in mind that at the time of the execution and delivery of said original deed to Holden, said assessments had long before been made and the exact amount assessed against said property was a matter of record and was known by both parties to the transaction. The debt then existed against said vendor, and it was made a charge and lien against this property, so that it must be presumed that both parties knew at the time of the transaction between them that it was a lien on the property, and the exact amount assessed thereon. Besides Holden was present at the time' the deed was delivered, and while he is not certain that he looked it over, yet he had an attorney to look it over for him. He says he knew he would have to pay whatever legal assessments were on the property, and that such was his intention when he made the deed, and that he would have to pay such in addition to the consideration paid to the grantor, and he considered the property worth the price paid to grantor in addition to the amount of the assessment.
In view of all the facts and circumstances surrounding the transaction, I am unable to dispose of the conviction that Mr. Holden and said grantor at the time of said conveyance considered said assessments as a part of the consideration, and that said deed expressed tire- agreement between them.
It would be a dangerous rule, unless the proof is clear, to permit parties to such a transaction to come in with a deed seeking to set aside such a-n agreement in a deed long alter the transaction, and at a time when it is of no interest to the grantor whether or not the grantee shall pay the assessment, and when his only concern is that he himself will not have it to pay. The contract, especially if in writing, made at the time when the grantor sells the property, and when he is more vitally interested carries greater conviction, and especially so when the instrument is examined by an attorney for the grantee, which examination is presumed to be thorough and careful, and made with knowledge of all the terms and conditions of the transaction.
*223 I am, therefore, of the opinion that Mr. Holden’s defense is not well taken, and that he is liable for said 125 feet so assessed.
The' only remaining question is that of benefits. I have examined carefully this question on the evidence adduced on the ground that those who signed the petition could defend on this ground notwithstanding they promoted the improvement by signing therefor. But I can not devote much time and space to a discussion of this question.
The evidence is quite conflicting as to the character of the work on this improvement. There is no doubt but that soon after the completion of the work and its acceptance by the city, that the street was cut up considerably, 'and especially towards the east end of the street there were many holes or depressions made in the pavement. One of the considerations here is, who was responsible for that. If the macadam roadway .was constructed substantially in accordance with the plans and contract, and if it was completed and accepted by the city as work performed in accordance with the plans and contract, and the defects complained of were made subsequently thereto by reason of the ordinary hauling over the street, then I do not think that this feature could be taken into consideration in determining benefits. My opinion is that the weight of the evidence shows that this street was cut up and the holes made the following spring, and were caused from heavy hauling over the street of material for the Parsons avenue improvement. This is the testimony of some of the witnesses whose presence in that locality afforded them an opportunity to know these facts. Besides, the evidence shows that a macadam street is not adapted for heavy traffic, and that such will cut up such a pavement. It seems -that Hanford street was one of the main thoroughfares from High .street to Parsons avenue. This would necessarily attract to -it the heavy traffic between said streets. The petitioners themselves should have known such by reason of their location on the street before it was determined what kind of an improvement would be made there.
It is not possible to restrict or limit the kind or character of traffic over a public street. The streets are open to the public *224 for all lawful traffic, and I am inclined to the opinion that the chief cause of the condition of this street soon after its completion was due to such heavy traffic about the following spring.
John Morrissey, H. J. Ossing and L. G. Addison, for plaintiff.
J. M. Butler, for defendant.
In view of all the evidence adduced pro and con on the question of benefits, I am of opinion that plaintiffs have not established satisfactory proof that the benefits were not equal to the cost of the improvement. But two witnesses for the plaintiff have testified positively on that subject, while several witnesses for the defendant have gone into detail on this question and testified that the benefits are in excess of the cost.
My opinion is that the weight of the evidence shows that those persons who signed the petition are not entitled to relief sn this ground; and under the authorities, as they petitioned council for this improvement, they will be liable for the respective amounts assessed against their property for said improvement.
As to the assessable frontage of the Clara Moeffet property that she will be assessed the feet front petitioned for by her.
The decision is that said assessments are void as to such of the plaintiffs as did not sign the petition for said improvement, and the defendants are enjoined from collecting the same against any such plaintiffs, and their said property is released from any lien against the same by reason of such attempted assessments, and they may recover their costs herein. All relief prayed for by such plaintiffs as signed said petition and of Mr. Holden is refused, and the restraining order as to such plaintiffs is dissolved. Said last named plaintiffs and the defendants will each pay one-half the' costs.