BOARD OF IMPROVEMENT DISTRICT No. 5 *v.* OFFENHAUSER.

Opinion delivered November 5, 1907.

1. IMPROVEMENT DISTRICT—ASSESSMENT—BURDEN OF PROOF.—In an attack upon an assessment in an improvement district the burden of proof is upon those attacking the validity of such assessment. (Page 262.)

2. SAME—SUFFICIENCY OF EVIDENCE.—The burden of proving that a majority in value of property owners in an improvement district did not sign a petition for the improvement is not sustained by testimony of the clerk that he examined the deed records and found no conveyances of real property in the district to certain persons whose names appear in the petition.    (Page 263.)

3. SAME—PETITION—SIGNATURE BY HUSBAND OF LANDOWNER.—Ratification of her husband's signature is sufficient to constitute a married woman who owned property within a proposed improvement district a signer to a petition for the creation of such district.   (Page 263.)

4. SAME—PETITION—SIGNATURE BY VENDOR.—One who held the title to land which he had contracted to sell on condition that the purchaser should approve the title is the owner and entitled to sign a petition for an improvement district if no deed was executed nor possession given nor any part of the price paid.   (Page 263.)

5. SAME—PETITION—SIGNATURE BY ATTORNEY.—In an attack upon an assessment in an improvement district a signature to the petition for its creation by one as agent and attorney of the landowner will not be treated as invalid because his power of attorney was not in writing and recorded, as the burden is upon those attacking the assessment to prove that the names of the property owners were not signed by authority.   (Page 263.)

6. SAME—PETITION—RIGHT OF HOMESTEADER TO SIGN.—The wives of the owners of homesteads within a proposed improvement district are not required to sign the petition for the improvement. (Page 264.)

7. SAME—COST OF IMPROVEMENT.—Kirby's Digest, § 5683, providing that "no single improvement shall be undertaken which alone will exceed in cost twenty per centum of the value of the real property in said district as shown by the last assessment," contemplates the last assessment made by the assessor as equalized by the board of equalization.   (Page 265.)

8. SAME—NOTICE OF FILING OF ASSESSMENT.—Under Kirby's Digest, §§ 5677-9, 5683-4, providing that, immediately upon the filing of the assessment in an improvement district, the city clerk shall insert in some newspaper a notice of the filing thereof, stating the date of filing, and that any interested person may, within ten days from the giving of such notice, appeal to the city council with regard to the assessment of his property, and impowering the council to pass an ordinance assessing the cost of the improvement upon the real property in the district, *held* that it was sufficient if the city council waited ten days after publication of such notice before passing the ordinance assessing the cost of the improvement.   (Page 266.)

9. SAME—ADJOINING PROPERTY—"Property adjoining the locality to be af-

fected," within the meaning of Const. 1874, art. 19, § 27, is any property adjoining or near the improvement which is physically affected, or the value of which is commercially affected, directly by the improvement, to a degree in excess of the effect upon the .property in the city generally.  (Page 267.)

10. SAME—CONCLUSIVENESS OF ACTION OF COUNCIL.—The action of the city council in including property in an improvement district is conclusive of the fact that it is adjoining the locality to be affected, except when attacked for fraud or demonstrable mistake.  (Page 267.)

11. SAME.—When an improvement district has been regularly created by the city council, and the boundaries fixed, the question of ascertainment of benefits and assessment of taxes becomes one for the board of assessors, whose action is conclusive upon the property owner unless set aside in the manner provided by law.  (Page 268.)

12. SAME—DAY IN COURT.—Kirby's Digest, § 5677-9, providing that notice shall be given of the filing of an assessment for the cost of an improvement and that the owner may appeal to the city council therefrom, and § 5685, providing that the ordinance levying the assessment shall be published and that proceedings to correct or invalidate such assessment shall be begun within thirty days, afford to property owners reasonable opportunity to be heard with reference to an assessment for a local improvement.  (Page 268.)

13. SAME.—The action of a city council in including within the territorial limits of an improvement district for building a sewer property which was already connected with a sewer in another improvement district did not amount to such a fraud or demonstrable mistake as would warrant the courts in declaring such action to be void.  (Page 268.)

14. SAME—RIGHT OF LAND OWNER TO OFFSET IMPROVEMENTS.—Under Kirby's Digest, § 5689, providing that if the owner of taxable property within an improvement district has improved his property in such manner that his improvement may profitably be made a part of the general improvement, the board of improvement shall appraise the value thereof and allow it as a setoff against the assessment against his property, a property owner in a sewer district who had previously connected his property in an adjoining sewer district is not entitled to set off the value of such connection against assessments upon his property in the former district.  (Page 269.)

Appeal from Miller .Chancery Court; *James D. Shaver,* Chancellor; reversed.

*Frank S. Quinn,* for appellant.

1.  There is no evidence to support the finding that there was an ordinance requiring property owners within 300 feet of a

sewer to connect, and that defendants connected. The amounts paid were voluntary contributions for their own private benefit. But the ordinance is in conflict with Kirby's Digest, § 5726, and void.

2. The burden of proof is on appellees. 68 Ark. 376.

3. The power of a city to build sewers is not affected by the fact that parties charged with a special tax for constructing sewer already have a sewer built. Cooley on Tax (3 Ed.), 1175; Hamilton on Spec. Assess. (1907), p. 586, § 6u8, etc.; 45 Kan. 296; 25 Pac. 605.

4. The setoff was erroneously allowed by the court. Setoffs are not allowed against taxes. Cooley, Tax. (3 Ed.), 20; 25 Am. & Eng. Enc. Law (2 Ed.), 504; 50 Ark. 384; Kirby's Digest, § 5689. Appellees do not bring themselves within the provisions of this last section.

5. Appellees are estopped. 59 Ark. 344; 2 Cooley on Tax. (3 Ed.), 1516; Hamilton, Sp. Assess. § 728.

6. Questions as to the assessment are cut off, not being raised within thirty days. Kirby's Digest, § § 5667, 5685; 67 Ark. 30; 69 *Id.* 68; 71 *Id.* 28.

7. The formation of taxing districts and levying assessments are matters of legislative discretion, and the action of a legislative body in determining such things is not subject to review by the courts. They are based on the theory of special benefits to property assessed. 52 Ark. 107; 68 *Id.* 376; 14 L. R. A. 655, note; Const. art. 19, § 27.

To city councils is delegated the authority to determine what is "property adjoining the locality to be affected." 52 Ark. 107. Their action cannot be attacked except for fraud or demonstrable mistake. 70 Ark. 451; 81 Ark. 208; 100 N. Y. 585; 125 U. S. 345. See also 81 Ark. 80; 81 Ark. 562; 181 U. S. 324.

8. A credit allowed on an assessment would break the rule of uniformity. Const. 1874; 77 Ark. 383; 48 *Id.* 370; 44 Vt. 186.

*Pratt P. Bacon*, for appellees.

1. The ordinance is void because not signed by a majority in value of the owners. Where one of two joint owners sign, only half should be counted. 69 Ark. 74. Pope should have

signed to bind the Earnest property. 69 Ark. 74. The power of attorney to Hays did not authorize him to sign for Mrs. Weed. *Ib.* There were two Gallaghers; and as only one signed, there is no presumption that it was Mrs. F. D. M. Gallagher who signed. 59 Ark. 159. The signatures of Scott and Buchanan and the property represented by them should be rejected; no authority to sign for their wives is shown. 54 N. W. 680; 88 N. W. 141; 69 Ark. 68. Piper and Hill signed *on conditions.* 54 N. W. 680. Striking off these, less than a majority in value signed.

2. Wives must sign petition where homesteads are involved. Kirby's Digest, § 3901; 31 S. W. 52.

3. The cost of the improvement exceeds twenty per cent., and ordinance void. Kirby's Digest, § 5683; 55 Ark. 148; 71 *Id.* 11; 81 Ark. 208.

4. Appellees had no notice of the filing. Kirby's Digest, § 5678, 4925; 3 Am. & Eng. Enc. (2 Ed.), 309, note 10; 130 U. S. 184; 21 Pick. 64.

5. Appellees not subject to a second special assessment. They were already in District No. 2, and thus would be required to pay in two districts—double taxation. This would avoid the whole act. Kirby's Digest, § § 5722, 5723, 5725, 5726; art. 2, § 2, Const. They were not required to begin proceedings within the thirty days. under § 5685. This statute cannot be made to apply unless specially pleaded. 80 Ark. 181, 72. On subject of second special assessment, see 53 N. E. 877; 25 Pac. 610. These statutes must be *strictly* complied with. 59 Ark. 356; 71 *Id.* 561. The improvement in District 5 was not a real, appreciable benefit, or as distinguished from the benefit to be received by the community. 5 Pac. 789; 68 Ark. 380.

6. The credit was properly allowed. Kirby's Digest, § 5689.

McCULLOCH, J. This is a suit in chancery instituted by the Board of Improvement of Improvement District No. 5 of the city of Texarkana against the owners of certain real property in the district to enforce the collection of special assessments levied thereon.

The property owners defended against the assessments on the several grounds discussed herein, and the court rendered a

final decree in their favor dismissing the complaint for want of equity, from which decree the plaintiff prosecuted this appeal.

1.   It is first contended by the appellees that the petition to the city council praying that the improvement be made was not signed by a majority in value of the owners of real property in the district, and that for this reason the assessments sought to be enforced are illegal and void.

In considering this phase of the case, it is important to inquire in the beginning where the burden of proof lies, whether upon the Board of Improvement or upon those who attack the validity of the assessments. It has never been decided by this court where the burden lies in a case of this kind to show whether or not the petition for the improvement was signed by a majority of the owners of property affected. The court has decided, however, that the burden was upon those attacking the validity of assessments to show that the city ordinance levying the same was not duly passed, and in the opinion of the court, after referring to the sections of the statute (Kirby's Digest, § § 5691, 5692) providing that in a suit instituted by the board of improvement to enforce payment of assessments it shall not be necessary to state more than the fact of assessment and non-payment thereof, nor to exhibit with the complaint any copy of ordinance or other document or paper connected with the assessment, etc., said that it is manifest that the Legislature intended "to make the few allegations of the complaint a *prima facie* case, that is, if not controverted in the pleading and by proof, to be sufficient to authorize the decree of condemnation and foreclosure." *Kansas City, P. & G. Ry. Co.* v. *Waterworks Imp. Dist.*, 68 Ark. 376.

The court has held in levee district and drainage district cases that regularity of the proceedings in forming the districts and in levying assessments will be presumed, in absence of evidence to the contrary. *Stiewel* v. *Fencing Dist.*, 71 Ark. 17; *Ritter* v. *Drainage Dist.*, 78 Ark. 580; *Overstreet* v. *Levee Dist.*, 80 Ark. 462; *Jonesboro, L. C. & E. Rd. Co.* v. *St. Francis Levee Dist.*, 80 Ark. 316; *Driver* v. *Moore*, 81 Ark. 80.

We think these cases fully establish the principle that the burden, in a controversy of this kind, is on the attacking party to show that the assessments have not been legally levied.

Now, keeping in mind the rule casting upon appellees the burden of showing that the petition for the improvement did not contain a majority in value of the real property in the district, let us see how they have borne the burden.

The certificate of the county clerk shows that, according to the last preceding assessment of the county assessor on file, the real property in the district was valued at ............$145,310

To this add the value, as shown by the agreed statement of fact, of church property omitted from the county assessor's list ........................    2,000

Total ........................$147,310
One-half ......................$ 73,665

It is agreed that the signatures to the petition represent the sum of $83,790 in value of said property, but appellees attempt by other testimony to show that this amount should be reduced. They introduce the county clerk, who testifies that he had examined the deed records and found no conveyances of real property in the district to certain parties whose names appear on the petition, but that did not prove that the parties did not own land in the district. Registry of a deed is not necessary to pass title to the property described therein, except as against subsequent purchaser without notice of the conveyance.

It is also shown that the names of three married women who owned property in the district, of the assessed value of $2,300, were signed to the petition by their respective husbands. There was further proof, however, that they ratified the signatures. This was sufficient to constitute them signers of the petition.

H. V. Earnest, who signed the petition, owned a lot valued at $400, but a few weeks before the filing of the petition with the city council had entered into an oral agreement for the sale of the lot to G. G. Pope. The agreement for sale was on condition that the purchaser should approve the title, and no deed was executed nor possession given nor any part of the price paid until after the petition had been filed and acted on by the city council. Earnest was the owner at the time the petition was filed, and he had the right to sign for the property.

Another name appearing on the petition is sought to be excluded because it was signed by the agent and attorney of the

owner. It is contended that the signature was not valid because the power of attorney was not in writing and recorded. The burden was on appellees to show that the names of the property owners were not signed by authority. A petition of this kind is not a conveyance of real property or a writing which affects real estate, within the meaning of the statute (Kirby's Digest, § 753) requiring letters of attorney containing power to execute such an instrument to be "acknowledged or proved and certified and recorded with any deed that such agent or attorney shall make."

It is agreed that real property of the aggregate value of $27,330 constituted the homesteads of the several owners who were married men, and that the respective wives of said owners did not sign the petition for improvement. That, it is contended by counsel for appellees, rendered the signatures of the owners of the several homesteads ineffectual for the purpose of counting this property on the petition. The petition is not an instrument which falls within the meaning of the homestead statute (Kirby's Digest, § 5901) requiring the wife's signature and acknowledgment. The Constitution and statute only require that a petition for improvement shall express the consent of the owners of real property in the district. The wife of the owner of a homestead is not the owner in this sense.

Certain other signatures to the petition are challenged on other grounds; but, as the exclusion of the property those persons are purported to represent will not affect the question under consideration, it is not important to discuss the points on which these signatures are sought to be excluded.

It can therefore be seen that the petition contained the signature of a majority in value of the owners of real property in the district, according to the assessment on file in the county clerk's office and after adding to the assessment the value of church property not assessed.

The agreed statement of facts recites that the board of assessors for the improvement district added to the assessment list (of the assessor) "all new buildings and other improvements then being made upon said real property and which was not contained in the county assessments, which new buildings they valued and assessed at $5,500. Counsel for appellant say that this

amount should be added to the assessment in determining whether
or not the petition contains a majority in value of the property
owners.   Even if we add that sum, it would not increase the
aggregate value of property in the district so much that the peti-
tion would not contain the signatures of a majority.   This would
increase the total assessment of value to $152,860, and the petition
contains the signatures of property owners representing in value
$83,790.

Moreover, the statement of facts does not show that these
additional improvements and buildings, the value of which was
assessed by the board, were added to the property when the peti-
tion was .presented to the city council. The value of the property
according to the last assessment at the time of presentation of
the petition must be considered in determining whether or not
the petition contains a majority of the property owned.   Im-
provements made thereafter can not be considered.

We do not deem it necessary to decide in this case whether
or not the last assessment made by the county assessor must be
accepted as conclusive evidence of the value of real property in
the district, or whether it is only *prima facie* evidence of such value
and the true value may be shown by other evidence.   Inasmuch
as we find, under the proof and agreed statement of facts in this
case, that the petition does contain a majority of the owners in
value of the property, we refrain from expressing an opinion on
the question just mentioned.

2.   The next defense is that the assessments are void be-
cause the cost of the improvement exceeded twenty per centum
of the assessed value of real property within the district.   The
agreed statement of facts recites that the value of real property
in the district, according to the assessment made by the county
assessor, as certified by the county clerk from the last assess-
ment lists on file in his office, was $145,310; and that the board
of improvement of the district reported to the city council that
the estimated cost of the improvement would be $29,890.   It is
also shown that  the board of equalization of  the county in-
creased the assessed valuation of real property in the district from
$145,310, the valuation fixed by the county assessor, to $151,730.
This was done before the estimated cost of the improvement was
reported to the city council, and, of course, before the ordinance

was passed levying the assessments to pay for the improvement. The statute provides that "no single improvement shall be undertaken which alone exceeds in cost twenty per centum of the value of the real property in such district as shown by the last county assessment." Kirby's Digest, § 5683. Now, "the last county assessment" would include valuation added or increased by the county board of equalization, and, as the valuation was thus increased before the board of improvement reported the estimated cost of improvement and before the city council passed the ordinance levying the assessments to pay for the improvements, the increased valuation must be considered in determining whether or not the cost of the improvement exceeded in value twenty per centum of the valuation of the property. That was the "last county assessment" at the time the ordinance was passed, and must determine the value of the property in the district at the time.

3. The assessment is also attacked on the alleged ground that notice of the filing of the assessment was not given as required by law. The assessment list was filed by the board of assessors of the district with the city clerk on October 10, 1905, and on the same day the clerk caused a notice in the form prescribed by law of such filing in a newspaper published in the city of Texarkana. The ordinance levying the assessments on the real property of the district was introduced in the city council on October 24, and was duly passed by the council on November 11, 1905.

The statute provides that immediately upon the filing of the assessment the city clerk shall insert in some newspaper a notice of the filing thereof, stating the date of filing; and further provides that "any person whose real property is embraced in said assessment may at any time within ten days from the giving of such notice file with the city clerk in writing his notice of appeal from the action of said board in making said assessment of his property, which appeal shall be heard and disposed of at the next regular meeting of the city council," etc. Kirby's Digest, §§ 5677, 5678, 5679. The city council is impowered by statute to pass an ordinance in the form prescribed, assessing the cost of the improvement upon the real property in the district. Kirby's Digest, §§ 5683, 5684.

It is contended that, in order for the ordinance to be valid, the notice must have been published for a full week, and that ten days must have thereafter elapsed before the introduction of the ordinance.

Pretermitting any discussion of the question whether the city council must, before passing the ordinance, await the expiration of the time given for the property assessed to appeal to the council from the assessment of the board of assessors and have their appeal heard, it is sufficient to say that the notice was duly given in this instance and the council waited sufficient length of time before permitting the introduction of the ordinance and passing it. Ten days elapsed from the date of publication of the notice until the ordinance was introduced.

4. The property of appellees is situated within the territorial limits of this district (No. 5), and is within three hundred feet of a sewer constructed in another improvement district (No. 2) in the city of Texarkana. The sewer in district No. 2 was completed and paid for before the organization of district No. 5; and before the organization of the last-named district. The city council passed an ordinance requiring all persons owning property within three hundred feet of any sewer in the city to pay three and one-half per centum of the assessed value of their property to said district and connect the same with such sewer. Appellees or their grantors paid four and one-half per centum of the value of their property to the treasurer of district No. 2, and connected their premises with the sewer in that district. These facts are pleaded as a defense against the assessments levied in district No. 5, and it is argued that this property received no benefit from the improvement in district No. 5, and is not liable for assessments.

This court, speaking through Mr. Justice SANDELS, in the case of *Little Rock* v. *Katzenstein,* 52 Ark. 107, laid down the following propositions as established by authority: "First. That property adjoining the locality to be affected is any property adjoining or near the improvement which is physically affected, or the value of which is commercially affected, directly by the improvement, to a degree in excess of the effect upon the property in the city generally.

"Second. That the action of the city council in includ-

ing property in an improvement district is conclusive of the fact that it is adjoining the locality to be affected, except when attacked for fraud or demonstrable mistake."

The same principle is recognized with reference to the power of the Legislature in creating improvement districts outside of cities and towns, in the recent cases of *Coffman* v. *Drainage District,* 83 Ark. 54, and *St. Louis S. W. Railway Co.* v. *Red River Levee District,* 81 Ark. 562. This court also expressed the same views, in substance, in *Lenon* v. *Brodie,* 81 Ark. 208, wherein the following language of Judge Cooley is quoted with approval:

"It has been repeatedly decided that the legislative act of assigning districts for special taxation on the basis of benefits cannot be attacked on the ground of error in judgment regarding the special benefits and defeated by satisfying a court that no special and peculiar benefits are received. If the legislation has fixed the district and laid the tax for the reason that, in the opinion of the legislative body, such district is peculiarly benefited, its action, must in general be deemed to be conclusive. No doubt there may be exceptions." 2 Cooley on Taxation (3d Ed.), pp. 1207, 1208.

When an improvement district has been regularly created by the city council, and the boundaries fixed, the question of ascertainment of benefits and assessment of taxes to pay for the improvement becomes one for the board of assessors provided for by statute, and the action of the board is conclusive upon the property owner unless set aside in the manner provided by law. *Driver* v. *Moore, supra.*

The statute provides, as already pointed out, that notice shall be given of the filing of the assessment with the city clerk, and that the property owners may within ten days appeal to the city council from the action of the board of assessors in fixing the assessments. The statute also provides that the ordinance of the city council levying the assessments shall be published, and that "all persons who shall fail to begin legal proceedings within thirty days after such publication for the purpose of correcting or invalidating such assessments shall be forever barred and precluded." Kirby's Digest, § 5685.

These statutes provide reasonable opportunities for prop-

erty owners to be heard with reference to the assessments made upon their property and afford them "a day in court" to be heard upon these matters affecting their rights. If they fail to avail themselves of these opportunities, they cannot afterwards be heard to complain that the assessments are unfair or unequal.

It cannot be said that the action of the city council in including the property of appellees within the territorial limits of the improvement district, notwithstanding the fact that they had already been permitted or required to connect their property with the sewer in an adjoining district and pay assessments to that district, amounted to such a "fraud or demonstrable mistake," using the language of Judge SANDELS, in *Little Rock* v. *Katzenstein, supra,* as would warrant the court in declaring the action of the city council in so doing void.

5. Appellees, by way of setoff against the enforcement of these assessments, invoke the benefit of the following statute:

"If, in the construction of sidewalks or making other improvements, any owner of taxable property in the district shall be found to have improved his own property in such manner that his improvement may be profitably made a part of the general improvement of the kind in the district, being also as good as that required by the system determined upon by said board, the board of improvement shall appraise the value of the improvement made by the owner, and shall allow its value as a setoff against the assessment against his property. And, in case the owner who has made such improvements shall be found to have failed to come up to the required standard, the board may allow him the value of the materials thereof, so far as the same may be profitably used in perfecting the system aforesaid, as a setoff against the assessment against his property thus improved. In such cases the board shall issue to the owner a certificate showing the amount of the setoff allowed, which certificate shall be received by the collector in lieu of money for the amount named therein charged against said property." Kirby's Digest, § 5689.

In the first place, the connection made by appellees of their premises with the sewer in another district was not and could not have become "a part of the general improvement of the

kind in the district," so as to entitle the owners to setoff the value thereof against assessments.

In the next place, appellees have not pursued the method pointed out by the statute for obtaining the benefit of the setoff.

On the whole case, we conclude that no defense against the enforcement of the assessments has been shown, and that the chancellor erred in dismissing the complaint. The decree is therefore reversed, and the cause remanded with directions to enter a decree in favor of the plaintiff in accordance with the prayer of the complaint.