COLQUITT *v.* STEVENS.

Opinion delivered February 9, 1914.

1.   IMPROVEMENT DISTRICTS—DOWER LANDS.—A widow being the life tenant merely of homestead lands, has no authority, for such lands, to sign a petition for an improvement district.   (Page 320.)

2.   IMPROVEMENT DISTRICTS—LANDS CONVEYED AWAY.—Where B. deeded lands to others, recording the same, although the conveyance was made to defeat the claims of creditors, nevertheless the deed operated to divest B. of title to the land, and B. can not sign a petition, as owner, for an improvement district.   (Page 321.)

3.   IMPROVEMENT DISTRICTS—FORMATION—SIGNATURE BY PERSON OTHER THAN OWNER—RATIFICATION.—In the formation of an improvement district under Kirby's Digest, § § 5667 and 5717, the actual owner of the land must sign his name to the petition, or he may ratify the act of some one who does sign his name to the petition.   (Page 323.)

4.   IMPROVEMENT DISTRICTS—FORMATION—SIGNATURE BY PERSON OTHER THAN OWNER—RATIFICATION.—Where persons, not the owners of lands in an improvement district signed the petition for certain lands, with their own names, and not the names of the actual owners, the actual owners can not ratify such signature.   (Page 323.)

Appeal from Columbia Chancery Court; *James M. Barker,* Chancellor; affirmed.

*C. W. McKay,* for appellants.

1.   The city council had jurisdiction and authority to act on the second petition.   Kirby's Dig., § § 5667, 5717; 81 Ark. 208.   The petition contained a majority in value.

2.   A vendee in possession, though the deed had not been delivered, is competent to sign the petition. 69 Ark. 68.

3.   A widow may, with the assent of the heirs, sign for property belonging to her deceased husband.   28 Cyc. 977.

4.   Where the granting clause conveys the fee, a proviso in the habendum clause repugnant to the grant-

ing clause is void. 98 Ark. 572; 92 *Id.* 324; 82 *Id.* 209; 81 *Id.* 480.

5. In construing wills, courts should construe the estate as vested. 90 Ark. 154; Paige on Wills, 369; 179 U. S. 606; 2 Underhill on Wills, 861.

6. Wives of the owners of homesteads are not required to sign the petition. 84 Ark. 258.

7. The signature of a tenant in common carries his interest. 69 Ark. 68.

8. Ratification of her husband's signature is sufficient where the property is in the wife's name. 84 Ark. 258.

9. An undelivered deed vests no title. 50 Ark. 367; 74 *Id.* 115. Whether an instrument is a deed or will is a matter of intention of the maker. 74 Ark. 115; 181 Ill. 49.

10. Consent of a majority in value of the property holders adjoining the locality affected is all that is required. Const. 1874, art. 19, § 27. Signatures by agents for the owners are good. 26 A. & E. Ann. Cas. 1128.

11. Improvements made after the last assessment and before the filing of the petition should be included. 69 Ark. 68; 99 *Id.* 508.

*Stevens & Stevens,* for appellees.

1. The council had no jurisdiction. No petition signed by a majority in value of the real estate, "as shown by the last county assessment," etc., was ever filed. 59 Ark. 345; 69 *Id.* 68; 50 *Id.* 116; 99 *Id.* 508.

2. Kirby's Dig., § § 5667, 5717, require all these jurisdictional facts to be shown. 46 Ark. 96; 29 *Id.* 500; 41 *Id.* 393; 2 Lewis on Em. Dom. (2 ed.), § 346; 8 S. W. 776; 21 *Id.* 1049; 54 N. E. 520, 64 Ark. 108-110. The certificate of the clerk is required by the act. It is mandatory. 59 Ark. 350. The petition was insufficient.

3. The petitioners did not own a majority in value as prescribed by law. Const., art 19, § 27; Kirby's Dig., § § 5667, 5717.

4. Where certain facts are required by law to appear of record, there can be no presumption as to these essential facts. The record must show them. 9 Enc. of Ev. 934; 64 Ark. 108.

5. Mrs. Boreing was not an owner. 52 Ark. 171; 67 *Id*. 325; 25 Ark. 225.

6. An owner of a life estate merely is not an owner. 69 Ark. 74.

7. Within the meaning of the statute the *owner* must be the holder of the fee. 48 Ark. 557; 50 *Id*. 116; 69 *Id*. 68; *Smith* v. *Imp. Dist.*, vol. 156, No. 2, 455.

8. J. M. Kelso had no authority to sign. Rood on Wills, § 70; 35 Ark. 17; 75 Ark. 321; 98 *Id*. 570.

9. Ferguson inherited only a life interest. Kirby's Dig., § 2645.

10. Murphy had sold the lot to Farns. His signature was worthless. Farns was the owner. 69 Ark. 74.

11. H. D. Hutchison was not authorized to sign. He was not the owner. 84 Ark. 263.

12. Pickler died the owner of the lot, leaving the title in his minor child. 33 Ark. 150.

13. The J. F. Magile lot should have been deducted from the petition. 63 Ark. 100.

14. Title once vested is presumed to remain in the purchaser. 4 Wend. 672; 30 Mo. App. 163; 9 Enc. Ev. 262, 910; 15 Cyc. 128, 129; 111 S. W. 579.

15. Sharman was in possession at his death and this is presumption of title. 33 Ark. 150.

16. Mrs. Hutchison only had a life estate. 40 Cyc. 1386; 90 Ark. 152; 52 S. W. 320; 5 L. R. A. 523; Rood on Wills, § 535; 72 Ark. 297.

17. Heirs can not bind the homestead. Const., art. 19, § § 6 and 10.

18. Carrington and Willis could not bind their wives. They were seized, not by moiety, but by entirety. 2 L. R. A. 434; 4 *Id*. 224; 29 Ark. 202; 61 *Id*. 388; 84 *Id*. 37.

19. Appellants' claim for 50 per cent upon the valuation, after the 1911 assessment, and before the petition

was filed, is unwarranted by law. 99 Ark. 508; 84 Ark. 265.

SMITH, J. On or about the 20th of April, 1912, a petition signed by twelve resident owners of real property in the city of Magnolia, Arkansas, was filed with the council of said city, asking it to lay off the entire city into one improvement district, for the purpose of erecting a complete system of waterworks.

Upon the filing of this petition the council passed an ordinance creating an improvement district for the purpose of constructing and maintaining waterworks in the city of Magnolia, and fixing the boundaries of said district, said boundaries being the corporate limits of said city. Afterward, within the time prescribed by law, a petition was filed, signed by a large number of real property owners, within said district, asking that the improvement contemplated by the former petition be made, and that the cost thereof be assessed and charged upon all the property situated within the district, and asking that the city council appoint three persons to compose a board of improvement for said district. Upon the filing of this petition the council found that it was signed by a majority of the owners of real property in said district and appointed J. W. Colquitt, H. D. Hutcheson and A. M. Crumpler, appellants in this case, as a board of improvement, and said board of improvement, after the assessments of benefits had been filed with the clerk of the city of Magnolia, appointed Aubrey Rowe, the other appellant in this case, as collector for said improvement district, who at the time of the filing of this suit had duly qualified as such collector.

On the 4th of April, 1913, the appellees filed their petition in the Columbia Chancery Court for the purpose of enjoining the appellants from proceeding further with the making of the improvements contemplated by the petition aforesaid, and to enjoin the collector from collecting the benefits assessed against their property.

The complaint alleged various irregularities in the establishment of the improvement district, and, among

others, that the petition for its establishment was not signed by a majority in value of the property owners within said district, and we will discuss only that question, as it is decisive of the case. The chancellor made several findings adverse to the district; but he also found that the petition did not contain the requisite majority in value of the owners of real property, and we think that finding is not contrary to the preponderance of the evidence. There was an agreed statement of facts in the record, from which it appears that the petitioners owned property of the assessed value of $204,597, and that $220,461 would be a majority of the property assessed, and that the assessed value of the property in dispute amounted to the sum of $35,250; that is to say, the right of petitioners to sign the petition, and who claimed the authority to sign for that amount of property according to the assessment, was left in dispute under the agreed statement of facts.

Appellants say they can concede all the signatures in dispute and still have a majority, provided there is taken into account the improvements made on the property between the date of the last assessment, and the time of filing the petition; and they say the value of these improvements should be included in determining whether or not the majority in value of the real property owners signed the petition. They say the proof shows the value of these improvements was $12,939 and that the assessment was made upon a 50 per cent basis, and that therefore these improvements should be included and counted at the sum of $6,469.50. This contention is based upon appellants' construction of the decision in the case of *Ahern* v. *Improvement District,* 69 Ark. 68. Practically the same contention was made in the case of *Improvement District No. 1 of Clarendon* v. *St. Louis Southwestern Railway Co.,* 99 Ark. 508, and the question was exhaustively discussed, in an able opinion by Mr. Justice FRAUENTHAL, in which it was said:

"We conclude that the Legislature was authorized to prescribe a method for determining whether a ma-

jority in value of the owners of real property within an improvement district had consented thereto, and in adopting such a plan to fix as a basis for such determination the valuation placed upon property by the last county assessment. This the Legislature has done by the provisions of section 5717 of Kirby's Digest. It has been the uniform practice in this State, under the above statute, in taking steps for the formation of improvement districts in towns and cities, to be governed by, and to consider as controlling, the valuation of each lot and piece of property as it appears on the county assessment list, even though other testimony might show different values. In like manner we see no reason why the total valuation of the real property in a proposed improvement district should not be controlled and governed by the amount of the total valuation thereof, as shown by said county assessment list. By that statute, we are of opinion that the Legislature has prescribed that the total value of all the real property in an improvement district shall be evidenced and determined by the total valuation placed upon the property therein, as shown by the last county assessment, and that the value of each lot and parcel of real property therein, shall be evidenced and determined by the valuation placed thereon in said assessment. This holding is not in conflict with any ruling made in the cases of *Ahern* v. *Board of Improvement,* 69 Ark. 68; *Earl* v. *Board of Improvement,* 70 Ark. 211, and *Board of Improvement* v. *Offenhauser,* 84 Ark. 257.

"In these latter cases the court permitted the value of church property, which was omitted from the county assessment, to be added to the valuation of the property of the district, as shown by the county assessment. But in none of said cases did the court decide that the value of such omitted property was required to be considered in determining the total value of the property in the district, or that such total value should not be governed by the last county assessment. In each of these cases it was only decided that, even if the value of the omitted property was added to the total valuation placed on the

property in the district by the county assessment, still a majority in value of the property owners consented thereto."

A condensation of the discussion of that question is found in the syllabus of that case where it is said: "Improvements—how consent of property owners ascer-·tained. Kirby's Digest, § 5717, providing that in ascertaining whether a petition for improvement of any kind is signed by a majority in value of the property owners, the council shall be governed by the last county assessment on file, the city council is concluded by· the last county assessment, and ·should not consider property omitted therefrom, pages 5, 15)."

But the decision that the ·value of the improvements made since the date of the last assessment should not be taken into account, does not necessarily determine that the petition did not contain a majority in value of the property owners, because appellants contend that various signatures should be counted, which they excluded from consideration, when they say that the petition contained a majority of $110.50, provided these improvements are taken into account; that is, that if these improvements are taken into account he may waive his right to have these disputed signatures counted, and still have a majority, but the right to count the value of the property owned by these persons, whose signatures are disputed, is not waived by appellants.

Of the $35,220 of assessed valuation in dispute, it is now admitted that $10,980 should be deducted, which will leave upon the petition signatures representing $228,-867.50, which amount is still a majority in value, if no further deductions were made. But we think other deductions must be made, as follows: Mrs. B. C. Gladney signed the petition as owner of property assessed at $1,000; but she admitted that the title was not in her, and that she only had a homestead interest in the land. As Mrs. Gladney owns only a life estate, she had no authority to sign the petition. *Ahern* v. *Board Improvement Dist.*, 69 Ark. 68.

Mrs. M. E. Boreing signed as the owner of property at the assessed value of $1,800. Appellants make the following statement in regard to her right to sign: "The evidence in this case showed that in 1893, Mrs. Boreing conveyed the property assessed at $1,800 to Maude I. Boreing, J. T. Boreing and O. D. Boreing. The grantees in this deed were minors at the time; and at the time the conveyance was made by Mrs. Boreing, there was a failure of the firm of Collier, Colquitt & Co., of which Mrs. Boreing was a member. The evidence clearly shows that this conveyance was made to the children for the purpose of preventing the creditors of Collier, Colquitt & Co. from seizing the property for their debts." Appellants further say that the grantees knew nothing of this deed, and that it was never delivered to them, and that Mrs. Boreing has continued in possession of the property, paying the taxes thereon, and collecting the rents. Mrs. Boreing testified that she did not know whether the deed had been delivered or not, and that if she was the owner of the property she expected it all to go to her children each alike upon her death. But the deed was recorded, even though it may never have been delivered, and this was sufficient to make it effective as a conveyance. *Kerr* v. *Birnie,* 25 Ark. 225; *Stephens* v. *Stephens,* 108 Ark. 53, 156 S. W. 837. And there was evidence to the effect that Mrs. Boreing had signed the petition with the knowledge and consent of one of the children, and that the others did not object. Although this conveyance may have been made only for the purpose of defeating creditors, it operates to divest Mrs. Boreing of the title to this land, and of the right to sign the petition as its owner. *Bell* v. *Wilson,* 52 Ark. 171; *Doster* v. *Manistee National Bank,* 67 Ark. 325.

Mrs. Florence Wyrick, who signed the petition, is said to have the right to do so for $1,350 of assessed valuation. It is admitted that she owns only a life interest in the property, but it is said her children who own the fee, knew of the act of her signing the petition and authorized

and consented to her signature, with full knowledge of all the facts and circumstances connected with it.

J. M. Kelso signed as the owner of property assessed at $1,450. Of this property, one lot of the value of $470 had been conveyed to him by his wife who died before the date of his signature. Another lot of the value of $900 was embraced in a conveyance by him to his daughter. The terms of this instrument are such that a serious question is made whether the instrument is a will or a deed; but we find it unnecessary to decide that question, as the $900 valuation would not make a majority if included. However, the $470 valuation is stricken off because Judge Kelso was not the owner of it, when he signed the petition.

J. C. Wyrick signed the petition in his own name and his wife was the owner of property assessed at $1,500.

J. M. Byrd signed the petition in his own name, and his wife was the owner of property assessed at $800.

W. R. Gantt signed the petition, and his wife was the owner of property assessed at $1,000.

W. H. Smith signed the petition in his own name, and his wife was the owner of property assessed at $200.

C. P. Thornton signed the petition in his own name, and his wife is the owner of property assessed at $1,000.

T. J. Brewster signed the petition in his own name, and his wife is the owner of property assessed at the sum of $1,100.

It is said of each of these persons, who are not the owners of any property, but whose wives are, that their signatures should be included because the petition was signed with the knowledge and consent of the wives of the respective petitioners, and that, if in any case this consent had not been obtained in advance, the subscriber's act was subsequently ratified. It is said that the signatures of Mesdames Gladney, Boreing and Wyrick should be counted for the reason that the owners of the fee either authorized, or ratified, their respective signatures. It is urged that ratification cures the lack of authority, and that, where the proof shows subsequent

ratification it is immaterial in whose name the petition was signed, and that it is likewise immaterial that there was no authority for the signature in the first instance. Appellants say that the case of *Board of Improvement Dist. No.* 5 v. *Offenhauser,* 84 Ark. 257, is authority for that position; but we do not think the case sustains that position. It was decided in the *Offenhauser* case that the names of three married women who owned property in the district, whose names were signed to the petition by their respective husbands, should be counted because the proof showed ratification of their signatures. But it will be observed that the names of the owners of the property were signed to the petition and that was not done in the present case. Here the owners of the property could not ratify the signing of their names, because their names were not signed, and there could be no ratification of a thing which had never been done. The Constitution provides that these improvements may be made, when the consent of the property holders owning property shall be obtained. Constitution 1874, art. 19, § 27. And the statute provides how this consent must be evidence. There must be a petition (Kirby's Digest, § 5667), and this petition must be signed by the owners (Kirby's Digest, § 5717). *Rector* v. *Board,* 50 Ark. 116. It is not therefore sufficient that an owner favor the improvement, and that he did not object that some name other than his own was signed to the petition, with the intention of binding him. The statute requires, and its provisions are mandatory, that the name of the owner must be signed to these petitions, although if the owner does not sign his own name in his own hand, he may authorize another to do so for him, or may ratify the act of another who has signed it.

The ten persons above named represent a total assessed valuation of $10,320 and this deducted from the admitted value of $228,867.50 leaves only the sum of $218,547.50, which is not a majority in value of the total assessments, and as this is a jurisdictional fact, the district can not be established, and the chancellor's action in dissolving it is affirmed.