JOHNSON *v.* NORSWORTHY.

5-3558                                          390 S. W. 2d 439

Opinion delivered May 24, 1965.

*Arnold & Hamilton,* for appellant.

*W. P. Switzer,* for appellee.

GENE WORSHAM, Special Associate Justice. The appellees were the proponents in the Ashley County Court of a petition seeking the establishment of a sanitary sewer improvement district in a 2,514.02 acre area adjacent to the City of Crossett, a city of the first class. After proper hearing, the Ashley County Court reached the conclusion that the petitions were legally sufficient and entered an order creating the improvement district. From this order the opponents timely appealed to the Ashley Circuit Court. The findings of the County Court were modified in certain respects not germane to the issues herein, but affirmed as to the establishment of the district. From this order comes this appeal.

The principal issue is whether or not the proponents' petitions were legally sufficient in containing signatures of a majority in area of real property owners within the proposed improvement district. The opponents to the formation of the improvement district assert various irregularities in the computation of the acreage represented by the signatures borne on the petitions.

There seems to be no dispute that the proposed district contains 2,514.02 acres. The circuit court found that the petitions bore valid signatures of landowners who owned an aggregate of 1,259.20 acres within the district, thereby giving the proponents and appellees a majority of 2.27 acres.

The most serious question raised concerns certain corporate lands which were included in the ranks of the proponents for the formation of the district. It is conceded that the corporate names appeared nowhere on the petition.

It appears that Etheridge & Sawyer, Inc., an Arkansas corporation, holds legal title to a 37-acre subdivision within the proposed district. At the hearing below it was established that H. A. Etheridge is the president of Etheridge & Sawyer, Inc., and that his wife, Etta Mae Etheridge, is the secretary. Mr. and Mrs. Etheridge both signed their individual signatures to the proponents' petition. Mr. Etheridge testified that he and Mrs. Etheridge had authority to act solely in the affairs of the corporation and to bind the corporation. That he signed the sewer district petition for the purpose of including the acreage owned by Etheridge & Sawyer, Inc. The lower court found that Mr. and Mrs. Etheridge signed the petition to bind the corporation and it was the intention of the corporation to be bound by their action.

A similar irregularity was raised by the inclusion of a .50-acre tract owned by Crossett Zero Butane Gas Company which also is a corporation, of which John Scott is the vice-president. Mr. Scott's individual name appeared on the petition and he testified that he signed the petition as an official of the corporation for the purpose of binding the corporation, and that he had approval of the board of directors to sign the petition. The name of Crossett Zero Butane Gas Company did not appear on the petition. The court also included lands owned by the gas company among those favoring establishment of the district.

The statute under which this petition was filed (Ark. Stat. 20-701) provides:

"Upon the petition of a majority in value and of area of the owners of real property in any territory adjacent to a city of the first class * * * it shall be the duty of the county court to lay off into an improvement district the territory described in the petition * * *."

Ark. Stat. 20-702 provides:

"* * * On the day named in the notice it shall be the duty of the county court to meet and to hear said petition and to ascertain whether those signing the same constitute a majority in value and of area and if the county court determines that a majority in value and of area have petitioned for the improvement it shall enter its judgment laying off the district as defined in the petition and appointing the commissioners named in the petition * * *. If it finds that a majority in value and of area has not signed said petition, it shall enter its order denying the same."

The principal question here is whether or not signatures on the petition constituted a majority "in area" of the owners of real property within the proposed district. If the petitions contained a majority in area of the owners, it was the clear statutory duty of the court to enter its order laying off the district. On the other hand, if the petitions were deficient in containing a majority, it was the lower court's duty to deny the petition. We have previously held that this statutory proviso is jurisdictional. *Colquitt* v. *Stevens,* 111 Ark. 314, 163 S. W. 1411.

In this case the corporate names of Crossett Zero Gas Company and Etheridge & Sawyer, Inc. did not appear on the petition. Appellees urge that the petition should be corrected to conform to the intention and purpose of the property owners; more specifically, that the petition should be corrected to reflect that the corporate officers were acting in behalf of their respective corporations, and not in their individual capacities. Numerous cases are cited by appellee touching on the authority of corporate officers to corporate officers to bind their principal. This is not a question, however, of whether or not the officers had or lacked authority to so bind their corporations, but whether in fact they did act in a manner so as to exercise or effectuate such authority.

Appellees, among other cases, rely upon *Lewis* v. *Forrest City Special Improvement District,* 246 S. W. 867, 156 Ark. 356. In that case, however, the corporate names were duly signed to the petition and the issue was

whether or not the persons affixing the corporate names to the petition had legal authority to do so. The effect of this court's ruling in that decision was that the signing of the corporate name to the petition was within the scope of the general authority which the directors, by continued consent, permitted the persons who signed the petition in its behalf, to exercise. It was there stated:

"There was no formal meeting of the board of directors for the purpose of authorizing Nimocks to sign the petition, nor was there any such formal meeting held until during the progress of the trial in the chancery court. During a suspension of the trial this corporation, as well as all the others whose signatures appeared on the petition held directors' meetings, and formal resolutions were passed ratifying the action of the respective officers who had signed their names. Counsel for appellee insist that that was a timely ratification in each instance, but this court reaches the conclusion that it was too late to validate the signatures by ratification after the enactment of the ordinance, for the reason that there must be a majority in value of the property represented by authorized signatures before the council can pass the ordinance."

The omission of the corporate owners' names from the petition is not cured by a subsequent ratification, nor can a deficient petition be corrected by a substitution or exchange of invalid signatures for valid ones, in order that the required majority be obtained.

In the case of *Colquitt* v. *Stevens,* 111 Ark. 314, 163 S. W. 1141, where legal title to property was held solely in the wife's name and the husband signed the petition in his individual name, the question was raised as to whether the wife's lands could be included. We there held:

"It is said of each of these persons, who are not the owners of any property, but whose wives are, that their signatures should be included because the petition was signed with the knowledge and consent of the wives of the respective petitioners, and that, if in any case this

consent had not been obtained in advance, the subscriber's act was subsequently ratified * * * It is urged that ratification cures the lack of authority, and that where the proof shows subsequent ratification it is immaterial in whose name the petition was signed, and that it is likewise immaterial that there was no authority for the signature in the first instance.
* * *

"Here the owners of the property could not ratify the signing of their names, because their names were not signed, and there could be no ratification of a thing which had never been done. * * * It is not therefore sufficient that an owner favor the improvement, and that he did not object that some name other than his own was signed to the petition, with the intention of binding him. The statute requires, and its provisions are mandatory, that the name of the owner must be signed to these petitions, although, if the owner does not sign his own name in his own hand, he may authorize another to do so for him, or may ratify the act of another who has signed it."

Inasmuch as we are of the opinion that to include these corporate lands in the acreage represented on the petition was error, we do not deem it necessary to a determination of this cause to discuss the other alleged errors raised by appellants.

After deducting the 37 acres owned by Etheridge & Sawyer, Inc., and the .50 acre owned by Crossett Zero Butane Gas Company from the 1,259.20 acres found by the lower court to be represented on the petition, there is a remainder of only 1,221.70 acres represented by valid signatures on the petitions, which is 35.32 acres less than a majority.

The judgment therefore is reversed and this cause remanded to the Circuit Court with direction to dismiss the petition as being deficient in containing signatures of a majority in area of the landowners within the proposed district.

JOHNSON, J., disqualified.