GARDNER *v.* BULLARD

5-3903                                        406 S. W. 2d 368

Opinion delivered September 26, 1966

*James Daugherty* and *Cooper Jacoway,* for appellant.

*John D. Eldridge* and *George P. Eldridge,* for appellee.

ED. F. McFADDIN, Justice. This appeal necessitates a study of Ark. Stat. Ann. § 21-914 (Repl. 1956) in regard to proceedings in a drainage district case.

In 1959 the Woodruff-Prairie Drainage District was duly organized by the Chancery Court of Woodruff County, pursuant to statute (See Ark. Stat. Ann. § 21-901 *et seq.* [Repl. 1956].) In January 1962 the District filed with the Woodruff Chancery Court a petition seeking, *inter alia,* authority to borrow money from a federal agency under Ark. Stat. Ann. § 21-914. In accordance with the said statute the Chancery Court set March 12, 1962, as the date for the hearing on the said petition, and due notice was given by publication. On March 12, 1962, the Court adjourned to March 20, 1962; and on that date there was presented to the Court the petition of the District for the desired order, and also the petitions of numerous objectors to the granting of the desired order. The Court heard the witnesses for the District (hereinafter called "proponents"), and appointed a Master to hear the testimony offered by the objectors.[1]

---

[1]The Court order recited:

". . . and from the testimony of the witnesses for the proponents the court finds that the construction of the proposed drainage system would be to the best interest of the landowners of the area described in the petition.

"The opponents to the petition on March 20th presented to the court various counter petitions which the court allowed to be filed over the objection of the petitioners.

"It appears to the court that a determination should be made as to whether or not a majority of the landowners in the district in number and in assessed valuation oppose the granting of the petition as represented by the signers of the counter-petition filed

The Master proceeded to hear the evidence, and it is voluminous. Then on January 20, 1965 the Master filed his report, which shows great study. He answered the questions posed by the appointing order:

1. The objectors' petitions filed on March 20, 1962 were filed too late, and such fact was, in itself, fatal to the objectors.

2. But if the objectors' petitions had been filed in time, they nevertheless would not constitute a majority in number of the owners of the lands located in the District.

3. The said objectors did constitute a majority of the real estate in assessed valuation.

On July 3, 1965 the Chancery Court approved the Master's report and granted the petition of the proponents; and from that decree there is this appeal by the opponents, in which they list three points:

"I. The court erred in holding that the landowners, who objected to the improvements and tax, could not object by petition.

"II. The court erred in refusing to accept petitions and testimony from opponents of the improvements after March 12, 1962.

"III. The court erred in refusing to admit testimony of husbands (who were tenants by the entire-

March 20, 1962 and the court further finds that this determination is of such a nature that it would require the services of a Master to determine the following facts:
"1. Whether the petitions were filed within the time and in the manner as provided by law.
"2. Whether those appearing in the time and manner as provided by law constitute a majority in number of owners of lands located within the district.
"3. Whether those appearing in the time and manner provided by law are owners of a majority of real estate located within the district in assessed valuation."

ty with their wives of land in the district) that their
wives opposed the improvements and tax levy.''

We find merit in Points I and II urged by the ap-
pellants in their brief. However, there is no need to dis-
cuss these points because we find no merit in Point III
urged by the appellants, and such conclusion necessitates
an affirmance of the decree of the Chancery Court. We
proceed, therefore, to a discussion of Point III, as listed
by appellants.

''The germane portion of the statute here involved
(Ark. Stat. Ann. § 21-914) reads:

''The Board is hereby authorized to cooperate with
the United States or any agency ... thereof ... and
the Board shall have authority to negotiate a con-
tract with the United States .... After the terms of
the contract ... have been negotiated with the United
States, the Board shall petition the Chancery Court
for the ratification and approval of the contract ....
The Chancery Clerk shall give notice by publication
... calling upon all persons owning property within
said District to appear before the Chancery Court
upon some date ... to be fixed by the Court, to
show cause in favor of or against the ratification of
the contract .... If upon final hearing the Court
deems it to the best interest of the owners of real
property within said District, the Court shall enter
an order ratifying and approving the contract ...
provided, however, *if it is determined by the Court
that a majority in number of the holders of title to
the lands within the District and the owners of a
majority in value of the lands therein ... oppose the
ratification of the contract ... the Chancery Court
shall enter an order disapproving the contract ...*''
(Italics our own.)

It must be borne in mind that before the objectors
can prevail against the finding of the Chancery Court
in favor of the contract recommended by the Board, the

objectors have to establish (1) that they constitute a majority in number of the holders of title to the lands within the District, and also (2) that they constitute a majority in value of the lands in the District. And this heavy burden we find the opponents have failed to discharge insofar as concerns the *majority in number of the holders of title to the lands within the District.*

The appellants have conceded that there are twenty tracts in each of which the title is held by husband and wife as an entirety estate; and that in each instance the petition in opposition to the proposal was signed only by the husband. For illustration: the petition was signed as ''John Smith,'' whereas the title was in ''John Smith and Mary Smith, his wife.'' The appellants have also impliedly conceded that they do not have a majority of the holders of the title to the lands in the district unless either (a) land held by entirety be counted as one ownership, with John Smith (following the illustration above) having the right to sign for the entire title; or (b) John Smith, having signed as shown in the illustration, could be allowed to testify at the trial that his wife, Mary Smith, agreed with him in opposition to the project.

We consider each of these matters.

(a)    As regards ownership: in an estate by the entirety, the wife is certainly a part owner of the title. In *Branch* v. *Polk,* 61 Ark. 388, 33 S. W. 424, we had occasion to consider the matter of an estate by the entirety, and we there said: ''The right of the wife to control and convey her interest, we think, is now equal to the right of the husband over his interest. They each are entitled to one-half of the rents and profits during coverture, with power to each dispose of or to charge his or her interest, subject to the right of survivorship existing in the other.'' This holding has been reaffirmed in many cases, some of which are: *Western Assurance Co.* v. *White,* 171 Ark. 733, 286 S. W. 804; and *Pope* v. *McBride,* 207 Ark. 940, 184 S. W. 2d 259. Thus we consider it as thoroughly established in this State that in

an estate by the entirety the wife is a holder of a portion of the title which the husband, acting alone, cannot convey.

We have several cases involving improvement districts in which the owner of a portion of a title signed the petition. Some of these are: *Ahern* v. *Board,* 69 Ark. 68, 61 S. W. 575; *Earl* v. *Board,* 70 Ark. 211, 67 S. W. 312; *Board* v. *Offenhauser,* 84 Ark. 257, 105 S. W. 265; *Colquitt* v. *Stevens,* 111 Ark. 314, 163 S. W. 1141; *City of Malvern* v. *Nunn,* 127 Ark. 418, 192 S. W. 909; and *Johnson* v. *Norsworthy,* 239 Ark. 545, 390 S. W. 2d 439. In *Ahern* v. *Board, supra,* we held that when lands were owned by two tenants in common and a petition was signed by only one of them, then such signing person was the sole owner of only one-half interest in the property. in *Earl* v. *Board, supra,* we held that where property was owned by a partnership (Orrel Bros.), and the petition was signed by only one partner (W. T. Orrel), then only one-half of the ownership had signed the petition. Under these cases, and under the case of *Branch* v. *Polk, supra,* we think that when John Smith alone signed the petition (as in the illustration), he was only the holder of a part of the title to the property, and the interest of his wife, Mary Smith (as in the illustration), could not be counted as joining in the petition.

The appellants claim that the cited cases are not governing because appellants claim that an estate by the entirety is different from a co-tenancy or a partnership. It is true that there is a difference between the estates; but the governing principle is the same. In an estate by the entirety the wife has an interest even during the lifetime of the husband which he cannot convey away from her; and we think her signature is just as essential to becoming a valid objector to the district as if she had been a co-tenant or a partner.

If in the illustration John Smith had signed the petition ''John Smith and Mary Smith, his wife,'' or even ''John Smith and wife,'' then oral testimony could have

been heard to show that he was authorized to sign the petition on behalf of his wife. Such is the holding in *Board* v. *Offenhauser, supra,* and *City of Malvern* v. *Nunn, supra.* But in the case at bar there was an entire failure on the part of John Smith (as in the illustration) to show in any way by signature that his wife owned any interest in the title or had joined with him.

(b) In the second place, the appellants claim that the husband should have been allowed to testify at the trial that his wife, though not having signed the petition in any way, was in fact in agreement with him in opposition to the project. We find no merit in appellants' position. If the husband had signed his wife's name her *ratification* could have been shown; but in the entire absence of anything in the petition showing the wife either as an owner or as joining with the husband, then her ratification could not be shown. There was nothing to ratify. In *Colquitt* v. *Stevens, supra,* we said: "Here the owners of the property could not ratify the signing of their names because their names were not signed and there could be no ratification of a thing which had never been done." This holding was followed and reaffirmed in our recent case of *Johnson* v. *Norsworthy, supra.* Certainly if the wife could not, by her own testimony, ratify her unsigned name, then clearly her husband could not by oral evidence attempt to show her agreement with him as regards objecting to the project.

The appellants impliedly concede that they do not have a majority of the holders of the title to the lands unless the whole title be counted in the twenty instances of entirety title, and since we have held that such cannot be allowed, it necessarily follows that the appellants have failed to show that they had a majority of the holders of the title in the petitions filed by them on March 20, 1962, the day the Court appointed the Master.

Appellants make one final argument for reversal as a portion of their Point III, and we now consider it.

During the hearing before the Master, and after March 20, 1962, the opponents attempted to file an additional petition in opposition, which additional petition contained the signatures of four other landowners; and the Master refused to permit this new petition to be considered. We hold that the Chancery Court was correct in affirming the Master's ruling on this point, because such additional petition filed after March 20, 1962 was filed too late. What the Court had authorized the Master to decide related to the petitions of opponents filed on March 20, 1962. The Master had no authority to allow an additional petition to be filed. The four late signing landowners could not remain silent for days, months, or years, and then appear only when such appearance became crucial. The Master was limited to consideration of those who had signed the petitions that had been filed on March 20, 1962.

Since the evidence failed to establish that the opponents to the plan of the proponents constituted a majority in number of the holders of title to the lands in the District, the opponents failed to defeat the plan approved by the decree of the Chancery Court.

Affirmed.